**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

| | |
|---|---|
| **MIRANDA DAWN SMITH, on behalf of the ESTATE OF ALVIS RAY SHREWSBURY,** ) <br><br> **Plaintiff,** ) <br><br> **v.** ) <br><br> **WEST VIRGINIA DIVISION OF CORRECTIONS AND REHABILITATION, AARON JOHNSON, individually as an employee of the West Virginia Division of Corrections and Rehabilitation, JOHAN RADOSEVICH, individually as an employee of the West Virginia Division of Corrections and Rehabilitation, ASHLEY TONEY, individually as an employee of the West Virginia Division of Corrections and Rehabilitation, NICHOLAS BURTON, individually as an employee of the West Virginia Division of Corrections and Rehabilitation, WEXFORD HEALTH SOURCES, INC., ASHLEY STROUP, LPN, individually as an employee of Wexford Health Sources, Inc., BETH WAUGH, LPN, individually as an employee of Wexford Health Sources, Inc. ERICA SIZEMORE, LPN, individually as an employee of Wexford Health, Sources, Inc. JOHN/JANE DOE WEXFORD EMPLOYEES, and JOHN/JANE DOE CORRECTIONAL OFFICERS,** ) <br><br> **Defendants.** ) | **Civil Action No._____** |

## COMPLAINT

**COMES NOW**, Plaintiff Miranda Dawn Smith, on behalf of the Estate of Alvis Ray Shrewsbury, by the undersigned counsel, and for her Complaint states and alleges as follows:

### I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and under its authority to decide pendent state law claims.

2.    Venue is proper because some Defendants can be served with process within the Southern District of West Virginia, Beckley Division, and because the incidents giving rise to this Complaint occurred within the Southern District of West Virginia, Beckley Division.

### II.    PARTIES

3.    Plaintiff Miranda Dawn Smith (hereinafter "Plaintiff") was at all times relevant hereto a resident of Wyoming County, West Virginia.

4.    Plaintiff is the biological daughter of the decedent, Alvis Ray Shrewsbury (hereinafter "Mr. Shrewsbury").

5.    Plaintiff was duly appointed as the Administratrix of the Estate of Alvis Ray Shrewsbury on December 14, 2022 by the clerk of the Wyoming County Commission.

6.    Defendant the West Virginia Division of Corrections and Rehabilitation (hereinafter, the "WVDOCR") is a state agency under the authority and control of the West Virginia Department of Homeland Security.  The WVDOCR operates, manages, and controls all state correctional facilities in West Virginia, including Southern Regional Jail in Raliegh County, Beaver, West Virginia (hereinafter "SRJ").

7.    According to W. Va. Code § 15A-3-1, the purpose of the WVDOCR is to "establish a just, humane, and efficient corrections program" in West Virginia (emphasis added).

- 2 -

8.      Defendant Aaron Johnson (hereinafter "CO Johnson") was at all times relevant hereto an employee of the WVDOCR and was at all times relevant hereto acting within the scope of his employment and under color of law as a correctional officer at SRJ.

9.      CO Johnson, who upon information and belief resides in Raleigh County, West Virginia, is sued only in his individual capacity.

10.     Defendant Johan Radosevich (hereinafter "CO Radosevich") was at all times relevant hereto an employee of the WVDOCR and was at all times relevant hereto acting within the scope of his employment and under color of law as a correctional officer at SRJ.

11.     CO Radosevich, who upon information and belief resides in Raleigh County, West Virginia, is sued only in his individual capacity.

12.     Defendant Ashley Toney (hereinafter "CO Toney") was at all times relevant hereto an employee of the WVDOCR and was at all times relevant hereto acting within the scope of her employment and under color of law as a correctional officer at SRJ.

13.     CO Toney, who upon information and belief resides in Raleigh County, West Virginia, is sued only in her individual capacity.

14.     Defendant Nicholas Burton (hereinafter "CO Burton") was at all times relevant hereto an employee of the WVDOCR and was at all times relevant hereto acting within the scope of his employment and under color of law as a correctional officer at SRJ.

15.     CO Burton, who upon information and belief resides in Raleigh County, West Virginia, is sued only in his individual capacity.

16.     Defendant Wexford Health Sources, Inc. (hereinafter "Wexford") is a Florida corporation with a principal place of business located at 501 Holiday Drive, Suite 300, Pittsburgh,

- 3 -

Pennsylvania, 15220. Upon information and belief, Wexford is a contractor of the WVDOCR and currently provides medical care to jails and prisons throughout West Virginia, including SRJ.

17. Defendant Beth Waugh, LPN (hereinafter "Nurse Waugh") was at all times relevant hereto an employee of Wexford and was at all times relevant hereto acting within the scope of her employment as a nurse at SRJ.

18. Nurse Waugh, who upon information and belief resides in Raleigh County, West Virginia, is sued only in her individual capacity.

19. Defendant Erica Sizemore, LPN (hereinafter "Nurse Sizemore") was at all times relevant hereto an employee of Wexford and was at all times relevant hereto acting within the scope of her employment as a nurse at SRJ.

20. Nurse Sizemore, who upon information and belief resides in Raleigh County, West Virginia, is sued only in her individual capacity.

21. Defendant Ashely Stroup, LPN (hereinafter "Nurse Stroup") was at all times relevant hereto an employee of Wexford and was at all times relevant hereto acting within the scope of her employment as a nurse at SRJ.

22. Nurse Stroup, who upon information and belief resides in Raleigh County, West Virginia, is sued only in her individual capacity.

23. Defendants John/Jane Doe Wexford Employees are yet to be identified current and/or former employees of Wexford who worked, or are still working, at SRJ.

24. Defendants John/Jane Doe Correctional Officers are yet to be identified current and/or former correctional officers employed by the WVDOCR who worked, or are still working, at SRJ.

25.     All Defendants, with the exception of Wexford, are sued up to the limits of the insurance policy(s) that provides liability coverage for their actions and omissions, or as otherwise permitted by law.

### III.     INTRODUCTION

26.     At the time of his death, Mr. Shrewsbury was a forty-five-year-old father of three (3) children and grandfather of seven (7) grandchildren.

27.     Like many West Virginians going through hard times, Mr. Shrewsbury struggled with addiction.

28.     At the time of his incarceration at SRJ, Mr. Shrewsbury was a non-violent, misdemeanor offender, who was found guilty of driving on a suspended license.  He was sentenced to serve six (6) months in jail for the offense.

29.     After his sentencing in Wyoming County Magistrate Court, Mr. Shrewsbury "self committed" to SRJ; in other words, he turned himself in to serve his sentence.

30.     Immediately upon his incarceration at SRJ, Mr. Shrewsbury was subjected to brutal acts of violence, deprivation of basic human necessities (like food and water), and callous indifference to his health, safety, and serious medical needs by correctional officers and healthcare staff alike.

31.     The conditions at SRJ, and the horrific treatment Mr. Shrewsbury received there, ultimately were a death sentence.

32.     Mr. Shrewsbury died in SRJ from entirely avoidable causes after being incarcerated for a mere nineteen (19) days.

33.    Sadly, Mr. Shrewsbury's fate is not unique.  Just simply being incarcerated in a West Virginia jail – especially SRJ – has been a death sentence to far too many.[1]

### IV.    <u>STATEMENT OF FACT</u>

34.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

35.    At all times relevant hereto, Mr. Shrewsbury was incarcerated at SRJ and in the custody of the WVDOCR.

36.    At all times relevant hereto, Wexford, through its agents and employees, provided medical care to inmates incarcerated at SRJ, including Mr. Shrewsbury.

37.    On August 29, 2022, Mr. Shrewsbury was incarcerated at SRJ.



---

[1] https://www.wvgazettemail.com/news/legislative_session/group-calls-for-federal-investigation-into-deaths-at-wv-regional-jails/article_fba818ce-f316-5e7e-b99f-1d1f9dd0058a.html; https://www.register-herald.com/news/srj-deaths-gain-national-attention-calls-for-independent-federal-investigation/article_d6a16b1e-b491-11ed-b125-93aa5f2a0d47.html

38.    On August 31, 2022, Mr. Shrewsbury's sentence was reduced by ninety-one (91) days for "good time credit."  Therefore, instead of being released on February 27, 2023 based on his original six (6) month sentence, Mr. Shrewsbury was scheduled to be free on November 28, 2022.

A.    ***Quarantine In Pod C-3: Beatings, Deprivation, and Staff Indifference***

39.    Upon his arrival at SRJ, Mr. Shrewsbury was initially placed in pod C-3 for quarantine.

40.    While in pod C-3, Mr. Shrewsbury was beaten multiple times by a group of inmates and had his daily food trays taken.

41.    While in pod C-3, Mr. Shrewsbury was beaten multiple times by a group of inmates and had his daily bottles of drinking water taken.

42.    While in pod C-3, Mr. Shrewsbury was beaten multiple times by a group of inmates and had his personal commissary food taken.

43.    Upon information and belief, while in pod C-3, Mr. Shrewsbury sustained broken ribs and/or other internal injuries as a result of these multiple beatings.[2]

44.    On September 5, 2022, Mr. Shrewsbury had a FaceTime call with members of his family.

45.    During this video call, Mr. Shrewsbury appeared weak and told his family that he was "hungry."

46.    Mr. Shrewsbury's family had placed money in his jail commissary account and ordered him extra food, but Mr. Shrewsbury told them that he had not received the food yet.

_____

[2] The inmates who repeatedly beat Mr. Shrewsbury and took his food and water have been identified as inmates "Miller," "McBride," and "O."

47.    The following day, on September 6, 2022, Mr. Shrewsbury spoke with members of his family over the telephone.

48.    During this telephone call, Mr. Shrewsbury reported that he was attacked and beaten twice the night before, and that it now "hurt to breathe."

49.    During this telephone call, Mr. Shrewsbury also told his family that when he was beaten the previous night, he had a portion of his commissary food taken.

50.    The following day, on September 7, 2022, Mr. Shrewsbury had another FaceTime call with members of his family.

51.    During this video call, Mr. Shrewsbury told his family that he had been attacked and beaten twice since he last spoke with them the previous day.

52.    The following day, on September 8, 2022, Mr. Shrewsbury had another FaceTime call with members of his family.

53.    During this video call, Mr. Shrewsbury reported that he was being deprived of water.  He told his family there was no running water in his quarantine cell, and that the jail was only providing him two (2) bottles of drinking water per day.

54.    However, during this video call, Mr. Shrewsbury informed his family that he was being beaten by other inmates and having his daily bottles of water taken.

55.    Despite knowing that the same group of inmates were repeatedly beating Mr. Shrewsbury in pod C-3, correctional staff at SRJ took no affirmative steps to move Mr. Shrewsbury to another pod or otherwise protect him from these attacks.

56.    Despite knowing that the same group of inmates were repeatedly beating Mr. Shrewsbury in pod C-3 and taking his food trays, correctional staff at SRJ took no affirmative steps to move Mr. Shrewsbury to another pod or otherwise protect him from these attacks.

57.     Correctional and medical staff at SRJ likewise failed to ensure that Mr. Shrewsbury was receiving adequate nutrition.

58.     Despite knowing that the same group of inmates were repeatedly beating Mr. Shrewsbury in pod C-3 and taking his daily bottles of drinking water, correctional staff at SRJ took no affirmative steps to move Mr. Shrewsbury to another pod or otherwise protect him from these attacks.

59.     Correctional and medical staff at SRJ likewise failed to ensure that Mr. Shrewsbury was receiving adequate hydration.

60.     Despite knowing that the same group of inmates were repeatedly beating Mr. Shrewsbury in pod C-3 and taking his personal commissary food, correctional staff at SRJ took no affirmative steps to move Mr. Shrewsbury to another pod or otherwise protect him from these attacks.

61.     Upon information and belief, while in pod C-3, Mr. Shrewsbury repeatedly hit the intercom or "call button" complaining of abdominal pain and difficulty breathing.

62.     Upon information and belief, while in pod C-3, Mr. Shrewsbury repeatedly told correctional officers and medical staff that he was in severe pain and believed his ribs were broken.

63.     These repeated attempts by Mr. Shrewsbury to receive medical attention were willfully and deliberately ignored by correctional officers and medical staff at SRJ.

64.     While in pod C-3, Mr. Shrewsbury specifically asked CO Johnson to protect him from the inmates who were beating him, but he refused.

65.     While in pod C-3, Mr. Shrewsbury specifically asked CO Johnson to protect him from the inmates who were taking his food and water, but he refused.

66.     While in pod C-3, Mr. Shrewsbury specifically asked CO Johnson to take him to the medical unit for medical care, but he refused.

**B.     *Pod C-5: Callous Indifference To Health and Serious Medical Needs***

67.     After approximately thirteen days (13) days in SRJ, Mr. Shrewsbury was moved from quarantine in pod C-3 to the general population in pod C-5 on or around September 10, 2022.

68.     On September 10, 2022, Plaintiff had a FaceTime call with her father, Mr. Shrewsbury.

69.     During this video call, Plaintiff took a screen shot picture of Mr. Shrewsbury, which showed him shirtless with two (2) black eyes.[3]



70.     During this September 10, 2022 video call with Plaintiff, Mr. Shrewsbury repeatedly asked to speak with his mother.

---

[3] https://www.wvva.com/2022/09/19/wyoming-county-inmate-dies-after-19-days-southern-regional-jail/

71.    The following day, on September 11, 2022, Mr. Shrewsbury had another FaceTime call with members of his family.

72.    During this video call, Mr. Shrewsbury told his mother that, "[i]f I don't make it out alive, I love you."

73.    According to Mr. Shrewsbury's cellmate in pod C-5, Brandon Lambert (hereinafter "Mr. Lambert"), he helped Mr. Shrewsbury complete a request for medical care on or about September 12, 2022.

74.    According to Mr. Lambert, the request for medical care concerned Mr. Shrewsbury's ongoing complaints about abdominal pain, having trouble breathing, and believing that his ribs were broken.

75.    According to Mr. Lambert, Mr. Shrewsbury handed in his request for medical care to Nurse Stroup during pill pass on or around September 12, 2022, but she rejected it.

76.     According to Mr. Lambert, Nurse Stoup told Mr. Shrewsbury that, "[t]here's nothing wrong with you."

77.    Upon information and belief, on September 12, 2022, Mr. Shrewsbury also complained to Nurse Waugh about severe abdominal pain and difficulty breathing.

78.    In response to this complaint about a potentially serious and/or life-threatening medical complication, Nurse Waugh ordered Pepto Bismol for Mr. Shrewsbury.

79.    On September 16, 2022, Mr. Shrewsbury had a FaceTime call with his mother.

80.    During this video call, Mr. Shrewsbury told his mother that he was "weak" and "starving."

81.    Upon information and belief, on September 16, 2022, Mr. Shrewsbury complained to Nurse Sizemore about severe abdominal pain and difficulty breathing.

82.     In response to this complaint about a potentially serious and/or life-threatening medical complication, Nurse Sizemore ordered Pepto Bismol for Mr. Shrewsbury.

83.     According to Mr. Shrewsbury's cellmate, Mr. Lambert, from approximately September 10, 2022 to September 16, 2022, while in pod C-5, Mr. Shrewsbury was in constant pain.

84.     According to Mr. Lambert, from approximately September 10, 2022 to September 16, 2022, while in pod C-5, Mr. Shrewsbury relentlessly complained to correctional officers and medical staff about his pain, discomfort, and difficulty breathing, but was ignored.

85.     According to Mr. Lambert, from approximately September 10, 2022 to September 16, 2022, while in pod C-5, Mr. Shrewsbury made repeated requests for medical attention, but was denied.

86.     According to Mr. Lambert, from approximately September 10, 2022 to September 16, 2022, while in pod C-5, Mr. Shrewsbury repeatedly asked CO Toney to take him to the medical unit, but she refused.

87.     According to Mr. Lambert, from approximately September 10, 2022 to September 16, 2022, while in pod C-5, Mr. Shrewsbury repeatedly asked CO Burton to take him to the medical unit, but he refused.

88.     According to Mr. Lambert, from approximately September 10, 2022 to September 16, 2022, while in pod C-5, Mr. Shrewsbury repeatedly asked Nurse Waugh to take him to the medical unit, but she refused.

89.     These repeated attempts by Mr. Shrewsbury to receive medical attention were willfully and deliberately ignored by correctional officers and medical staff at SRJ.

C.      ***The Death of Mr. Shrewsbury***

90.     According to Mr. Shrewsbury's cellmate, Mr. Lambert, at around 11:00 p.m. on September 16, 2022, Mr. Shrewsbury was in his cell and thought he was going to have a bowel movement.

91.     According to Mr. Lambert, Mr. Shrewsbury sat down on the commode, but then suddenly stood up, collapsed on the floor, and began bleeding profusely from his rectum.

92.     Upon information and belief, other inmates then rushed into Mr. Shrewsbury's cell, pressed the intercom or "call button," and informed C Tower that Mr. Shrewsbury "would bleed to death if someone did not come and help him."

93.     At 12:05 a.m. on September 17, 2022, the C Tower log reports, "called for med to C5 Shrewsbury."

94.     Eventually, CO Radosevich, CO Burton, and Nurse Stroup responded to Mr. Shrewsbury's cell.  They arrived with a wheelchair, presumably to take Mr. Shrewsbury to the medical unit.

95.     When they arrived, Mr. Shrewsbury was bleeding profusely, weak, and could barely stand.  Fellow inmates were pouring water on his face and trying to comfort him.

96.     CO Radosevich, CO Burton, and Nurse Stroup refused to help Mr. Shrewsbury into the wheelchair and watched him fall several times attempting to do so.  They also refused to let other inmates help Mr. Shrewsbury into the wheelchair.

97.     When Mr. Shrewsbury attempted to get into the wheelchair on his own, but was unable to, CO Radosevich, CO Burton, and Nurse Stroup made fun of him and cracked jokes.

98.     Eventually, Mr. Shrewsbury struggled into the wheelchair and was led away, leaving a trail of blood on the floor behind him.

99. Upon information and belief, Mr. Shrewsbury was not taken to the medical unit by CO Radosevich, CO Burton, and/or Nurse Stroup. Instead, he was taken to a shower, where he then became unresponsive.

100. EMS were called at approximately 12:25 a.m. and arrived on the scene at approximately 12:41 a.m.

101. When EMS arrived, they found Mr. Shrewsbury on a "bathroom floor" with "copious" amounts of blood and "dark red fecesses [sp] on his pants and legs."

102. EMS also reported that Mr. Shrewsbury had no pulse and was "unresponsive and not breathing" when they arrived.

103. Mr. Shrewsbury was then transported by EMS to the emergency room at Beckley Appalachian Regional Hospital (hereinafter "BARH").

104. At BARH, it was reported that Mr. Shrewsbury had a "GI bleed" and a "sudden onset of rectal bleeding and became unresponsive."

105. Mr. Shrewsbury was unable to be resuscitated and died shortly thereafter.

106. Despite his repeated pleas for medical attention, Mr. Shrewsbury was never taken to the medical unit at SRJ.

107. Despite his repeated pleas for medical attention, Mr. Shrewsbury was never seen by a doctor at SRJ.

108. Despite his repeated pleas for medical attention, Mr. Shrewsbury was never taken for an x-ray at SRJ.

109. Despite his repeated pleas for medical attention, Mr. Shrewsbury was never taken to a hospital for medical attention.

- 14 -

110.    Upon information and belief, correctional officers and/or medical staff at SRJ falsely reported that Mr. Shrewsbury had a "cardiac arrest" and then collapsed, instead of massive gastrointestinal bleeding.

111.    This fraudulent attempt to cover-up the true cause of Mr. Shrewsbury's death resulted in the West Virginia Office of the Chief Medical Examiner only doing a cardiac autopsy, instead of a full autopsy.

## V.    CAUSES OF ACTION

### COUNT I – EIGHTH AMENDMENT VIOLATIONS UNDER 42 U.S.C. § 1983
*Correctional Officer Defendants, Wexford Employee Defendants, John/Jane Doe Correctional Officers, and John/Jane Doe Wexford Employees*

112.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

113.    Defendants, while acting under color of law and within the scope of their employment, violated the Eighth Amendment right of Mr. Shrewsbury to be free from cruel and unusual punishment and the unnecessary and wanton infliction of pain.

114.    The actions of Defendants, described hereinabove, violated the constitutional rights guaranteed to Mr. Shrewsbury under the Eighth Amendment to the United States Constitution by acting with deliberate indifference to his health, safety, and serious medical needs.

115.    Defendants, as described hereinabove, were deliberately indifferent to, and willfully ignored, the health, safety, and serious medical needs of Mr. Shrewsbury.

116.    Defendants were both objectively and subjectively aware of the risk of serious harm posed by ignoring or otherwise failing to properly address Mr. Shrewsbury's safety concerns, health concerns, and serious medical needs.

117.    The actions of Defendants, described hereinabove, were not taken in good-faith, were objectively unreasonable, and were in violation of clearly established law.

118.    During the time period at issue, it was clearly established that subjecting an inmate to cruel and unusual punishment and the unnecessary and wanton infliction of pain, as described hereinabove, violated the Eighth Amendment to the United States Constitution.

119.    During the time period at issue, it was clearly established that acting with deliberate indifferent to, and willfully ignoring, the health, safety, and serious medical needs of an inmate, as described hereinabove, violated the Eighth Amendment to the United States Constitution.

120.    The actions of Defendants, described hereinabove, shock the conscious.

121.    The actions of Defendants, described hereinabove, were unlawful and unjustified.

122.    As a direct and proximate result of Defendants' unreasonable, unjustified, and unconstitutional actions, Mr. Shrewsbury suffered violations of his constitutional rights, severe bodily injury, conscious pain and suffering, and an untimely death.  Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia wrongful death statute, W. Va. Code § 55-7-6.

123.    In addition to these compensatory damages, Plaintiff will also seek to recover, under 42 U.S.C. § 1983, attorneys' fees and cost incurred during the course of this litigation.

124.    The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Mr. Shrewsbury, thereby justifying an award of punitive damages.

### COUNT II – CONSPIRACY TO COMMITT FOURTEENTH AMENDMENT VIOLATIONS UNDER 42 U.S.C. § 1983
*Correctional Officer Defendants, Wexford Employee Defendants, John/Jane Doe Correctional Officers, and John/Jane Doe Wexford Employees*

125.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

126.    Defendants, while acting under color of law and within the scope of their employment, acted jointly and in concert to deprive Mr. Shrewsbury of his Eight Amendment right to be free from cruel and unusual punishment.

127.    Defendants committed overt acts to accomplish the constitutional violations and injuries described herein.

128.    The actions of Defendants, described hereinabove, violated the constitutional rights guaranteed to Mr. Shrewsbury under the Eighth Amendment to the United States Constitution.

129.    The actions of Defendants, described hereinabove, were not taken in good-faith, were objectively unreasonable, and were in violation of clearly established law.

130.    During the time period at issue, it was clearly established that subjecting an inmate to cruel and unusual punishment and the unnecessary and wanton infliction of pain, as described hereinabove, violated the Eighth Amendment to the United States Constitution.

131.    During the time period at issue, it was clearly established that acting with deliberate indifferent to, and willfully ignoring, the health, safety, and serious medical needs of an inmate, as described hereinabove, violated the Eighth Amendment to the United States Constitution.

132.    The actions of Defendants, described hereinabove, shock the conscious.

133.    The actions of Defendants, described hereinabove, were unlawful and unjustified.

134.    As a direct and proximate result of Defendants' unreasonable, unjustified, and unconstitutional actions, Mr. Shrewsbury suffered violations of his constitutional rights, severe

bodily injury, conscious pain and suffering, and an untimely death. Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia wrongful death statute, W. Va. Code § 55-7-6.

135.    In addition to these compensatory damages, Plaintiff will also seek to recover, under 42 U.S.C. § 1983, attorneys' fees and cost incurred during the course of this litigation.

136.    The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Mr. Shrewsbury, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## COUNT III – FAILURE TO INTERVENE/BYSTANDER LIABILITY UNDER 42 U.S.C. §1983
### *Correctional Officer Defendants, Wexford Employee Defendants, John/Jane Doe Correctional Officers, and John/Jane Doe Wexford Employees*

137.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

138.    Defendants, while acting under color of law and within the scope of their employment, violated Mr. Shrewsbury's constitutional rights by failing to intervene while the above-referenced constitutional violations occurred.

139.    Defendants were aware that Mr. Shrewsbury's constitutional rights were being violated, as set forth hereinabove, yet purposefully failed and/or refused to take reasonable steps to protect him.

140.    Defendants had opportunities to intervene and protect Mr. Shrewsbury, but chose not to.

141.    The actions of Defendants, described hereinabove, violated the Constitutional rights guaranteed to Mr. Shrewsbury under the Eighth Amendment to the United States Constitution.

142.    The actions of Defendants, described hereinabove, were not taken in good-faith, were objectively unreasonable, and were in violation of clearly established law.

143.    The actions of Defendants, described hereinabove, shock the conscious.

144.    The actions of Defendants, described hereinabove, were unlawful and unjustified.

145.    As a direct and proximate result of Defendants' unreasonable, unjustified, and unconstitutional actions, Mr. Shrewsbury suffered violations of his constitutional rights, severe bodily injury, conscious pain and suffering, and an untimely death.  Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia wrongful death statute, W. Va. Code § 55-7-6.

146.    In addition to these compensatory damages, Plaintiff will also seek to recover, under 42 U.S.C. § 1983, attorneys' fees and cost incurred during the course of this litigation.

147.    The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Mr. Shrewsbury, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

### COUNT IV – NEGLIGENCE
*Correctional Officer Defendants and John/Jane Doe Correctional Officers*

148.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

149.    At all times relevant hereto, Defendants owed Mr. Shrewsbury a duty of care.

150.    As set forth hereinabove, Defendants, while acting within the scope of their employment, breached their duties of care to Mr. Shrewsbury.

151.    As a direct and proximate result of Defendants' negligent, reckless, and unreasonable conduct, Mr. Shrewsbury suffered severe bodily injury, conscious pain and suffering, and an untimely death.  Plaintiff will seek to recover all damages permitted under the law,

including but not limited to, all damages recoverable under the West Virginia wrongful death statute, W. Va. Code § 55-7-6.

152.    The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Mr. Shrewsbury, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

**COUNT V – MEDICAL NEGLIGENCE**
*Wexford, Wexford Employee Defendants, and John/Jane Doe*
*Wexford Employees*

153.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

154.    Wexford, through its agents and employees, owed Mr. Shrewsbury a duty to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider acting in the same or similar circumstances.

155.    Wexford, through its agents and employees acting within the scope of their employment, were negligent, careless, and reckless, and deviated from the standard of care in connection with its treatment of Mr. Shrewsbury by the actions and inactions described hereinabove, including but not limited to:

     i.    Failing to properly evaluate, diagnose, treat, and medically manage Mr. Shrewsbury at SRJ;

    ii.    Ignoring Mr. Shrewsbury's multiple requests for medical attention;

    iii.    Failing to assess the cause of Mr. Shrewsbury's persistent pain, discomfort, and difficulty breathing;

    iv.    Failing to bring Mr. Shrewsbury to the medical unit for evaluation and care;

    v.    Failing to take Mr. Shrewsbury to see a doctor; and

    vi.    Failing to take Mr. Shrewsbury to an outside hospital for medical care.

156.    Wexford, through its agents and employees, knew or should have known that deviating from the appropriate standard of care, as described hereinabove, could result in serious injury or death to their patients, including Mr. Shrewsbury.

157.    Defendants' failure to follow the accepted standard of care deprived Mr. Shrewsbury of a chance of recovery and increased his risk of harm, which was a substantial factor in bringing about his pain, suffering, and untimely death.

158.    As a direct and proximate result of Defendants' negligent, careless and reckless conduct, Mr. Shrewsbury suffered severe bodily injury, conscious pain and suffering, and an untimely death.  Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia wrongful death statute, W. Va. Code § 55-7-6.

159.    The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Mr. Shrewsbury, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

160.    Wexford is vicariously liable for the actions and omissions of its employees committed within the scope of their employment.

### COUNT VI – GROSS NEGLIGENCE
*Correctional Officer Defendants, Wexford, Wexford Employee Defendants, John/Jane Doe Correctional Officers, and John/Jane Doe Wexford Employees*

161.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

162.    At all times relevant hereto, Defendants owed Mr. Shrewsbury a duty of care.

- 21 -

163. Wexford, through its agents and employees, owed Mr. Shrewsbury a duty to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider acting in the same or similar circumstances.

164. As set forth hereinabove, Defendants, while acting within the scope of their employment, breached their duties of care to Mr. Shrewsbury.

165. In breaching their duties of care, Defendants displayed a conscious indifference to probable harmful consequences of their actions.

166. In breaching their duties of care, Defendants displayed a reckless disregard for the welfare of Mr. Shrewsbury.

167. As a direct and proximate result of Defendants' grossly negligent, reckless, and unreasonable conduct, Mr. Shrewsbury suffered severe bodily injury, conscious pain and suffering, and an untimely death. Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia wrongful death statute, W. Va. Code § 55-7-6.

168. The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Mr. Shrewsbury, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

169. Wexford is vicariously liable for the actions and omissions of its employees committed within the scope of their employment.

### COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS/TORT OF OUTRAGE
*Correctional Officer Defendants, Wexford, Wexford Employee Defendants, John/Jane Doe Correctional Officers, and John/Jane Doe Wexford Employees*

170. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

- 22 -

171.    Defendants' actions toward Mr. Shrewsbury, as described hereinabove, were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

172.    Defendants acted with intent to inflict emotional distress or acted recklessly when it was certain or substantially certain that emotional distress would result from their outrageous conduct.

173.    Defendants' heinous actions caused Mr. Shrewsbury to suffer severe emotional distress.

174.    The emotional distress was so severe, no reasonable person could be expected to endure it.

175.    As a direct and proximate result of Defendants' reckless, intolerable, and outrageous conduct, Mr. Shrewsbury suffered severe emotionally distress, and will seek compensatory damages for same.

176.    The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Mr. Shrewsbury, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

177.    Wexford is vicariously liable for the actions and omissions of its employees committed within the scope of their employment.

## COUNT VIII – COMMON LAW CIVIL CONSPIRACY
*Correctional Officer Defendants, Wexford, Wexford Employee Defendants, John/Jane Doe Correctional Officers, and John/Jane Doe Wexford Employees*

178.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

179.    As set forth hereinabove, Defendants acted jointly and in concert to:

   a.   Negligently injure Mr. Shrewsbury;

- 23 -

     b.  Injure Mr. Shrewsbury in a grossly negligent manner; and

     c.  Intentionally inflict emotional distress on Mr. Shrewsbury.

180.    As set forth hereinabove, Defendants had a meeting of the minds to accomplish the tortious actions and injuries described herein.

181.    As set forth hereinabove, Defendants committed overt acts to accomplish the tortious actions and injuries described herein.

182.    As a direct and proximate result of Defendants' tortious conduct, Mr. Shrewsbury suffered severe bodily injury, conscious pain and suffering, and an untimely death.  Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia wrongful death statute, W. Va. Code § 55-7-6.

183.    The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Mr. Shrewsbury, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

184.    Wexford is vicariously liable for the actions and omissions of its employees committed within the scope of their employment.

## COUNT IX – NEGLIGENT HIRING
### *Wexford and WVDOCR*

185.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

186.    At all times relevant hereto, Wexford and the WVDOCR owed inmates at SRJ, including Mr. Shrewsbury, a duty of care.

187.    Wexford and the WVDOCR owed inmates at SRJ, including Mr. Shrewsbury, a duty to not negligently hire employees and place them in position of power and authority where they can cause harm or injuries to others.

188.     Upon information and belief, Wexford and the WVDOCR did not conduct a reasonable investigation into the background of their Employee Defendants and did not adequately assess the possible risk of harm or injury to third-parties that could result from the conduct of their Employee Defendants if they were employed at SRJ.

189.     Upon information and belief, Wexford and the WVDOCR's Employee Defendants had a history of prior negligent acts and misconduct, including but not limited to, unjustified violence towards inmates; medical neglect; cruel and unusual punishment and the unnecessary and wanton infliction of pain; and deliberate indifferent to, and willfully ignoring, the health, safety, and serious medical needs of inmates.

190.     Upon information and belief, had Wexford and the WVDOCR conducted a reasonable investigation into the background of their Employee Defendants, they would have discovered that their Employee Defendants had a history of negligent acts and misconduct.

191.     Upon information and belief, had Wexford and the WVDOCR conducted a reasonable investigation into the background of their Employee Defendants, their negligent acts described hereinabove could have been prevented.

192.     The WVDOCR violated clearly established rights and/or laws with respect to the hiring of its Employee Defendants, *inter alia*, W. Va. Code § 15A-3-5 and WVDOCR Regulations.

193.     As a direct and proximate result of Wexford and the WVDOCR's negligent conduct, Mr. Shrewsbury suffered severe bodily injury, conscious pain and suffering, and an untimely death.  Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia wrongful death statute, W. Va. Code § 55-7-6.

194.    The actions of Wexford and the WVDOCR were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Mr. Shrewsbury, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## COUNT X – NEGLIGENT SUPERVISION AND TRAINING
### *Wexford and WVDOCR*

195.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

196.    At all times relevant hereto, Wexford and the WVDOCR owed inmates at SRJ, including Mr. Shrewsbury, a duty of care.

197.    Wexford and the WVDOCR owed inmates at SRJ, including Mr. Shrewsbury, a duty to properly and adequately supervise and train their employees, especially those in positions of power and authority, to prevent them from negligently causing harm or injuries to others.

198.    Upon information and belief, Wexford and the WVDOCR's Employee Defendants were not properly or adequately supervised at SRJ.

199.    Upon information and belief, Wexford and the WVDOCR's Employee Defendants were not properly or adequately trained at SRJ.

200.    Upon information and belief, Wexford and the WVDOCR's negligent supervision and training of their Employee Defendants allowed them to freely commit the negligent acts described hereinabove.

201.    Upon information and belief, had Wexford and the WVDOCR properly and adequately supervised and trained their Employee Defendants, their negligent acts described hereinabove could have been prevented.

202.    The WVDOCR violated clearly established rights and/or laws with respect to the supervision and training of its Employee Defendants, *inter alia*, W. Va. Code § 15A-3-4(a)(4), W. Va. Code § 15A-3-5, and WVDOCR Regulations.

203.    As a direct and proximate result of Wexford and the WVDOCR's negligent conduct, Mr. Shrewsbury suffered severe bodily injury, conscious pain and suffering, and an untimely death.  Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia wrongful death statute, W. Va. Code § 55-7-6.

204.    The actions of Wexford and the WVDOCR were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Mr. Shrewsbury, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

<u>**COUNT XI – NEGLIGENT RETENTION**</u>
***Wexford and WVDOCR***

205.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

206.    At all times relevant hereto, Wexford and the WVDOCR owed inmates at SRJ, including Mr. Shrewsbury, a duty of care.

207.    Wexford and the WVDOCR owed inmates at SRJ, including Mr. Shrewsbury, a duty to not negligently retain unfit employees, especially those in position of power and authority, who have engaged in negligent or otherwise wrongful conduct.

208.    Upon information and belief, Wexford and the WVDOCR's Employee Defendants had a history of prior negligent acts and misconduct, including but not limited to, unjustified violence towards inmates; medical neglect; cruel and unusual punishment and the unnecessary and

wanton infliction of pain; and deliberate indifferent to, and willfully ignoring, the health, safety, and serious medical needs of inmates.

209.     Despite these aforementioned negligent acts, as described hereinabove, Wexford and the WVDOCR's Employee Defendants were retained.

210.     Upon information and belief, Wexford and the WVDOCR knew or should have known that their Employee Defendants were unfit, but retained them anyway.

211.     Upon information and belief, Wexford and the WVDOCR could have reasonably foreseen the possible risk of harm or injury to others that could result from the conduct of their unfit Employee Defendants.

212.     Upon information and belief, had Wexford and the WVDOCR not negligently retained their Employee Defendants, their negligent acts described hereinabove could have been prevented.

213.     The WVDOCR violated clearly established rights and/or laws with respect to the retention of its Employee Defendants, *inter alia*, W. Va. Code § 15A-3-5 and WVDOCR Regulations.

214.     As a direct and proximate result of Wexford and the WVDOCR's negligent conduct, Mr. Shrewsbury suffered severe bodily injury, conscious pain and suffering, and an untimely death.  Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia wrongful death statute, W. Va. Code § 55-7-6.

215.     The actions of Wexford and the WVDOCR were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Mr. Shrewsbury, thereby justifying an

award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

WHEREFORE, Plaintiff demands judgment against Defendants, in an amount exceeding the minimum jurisdictional limit of this Court, and in such sums as will fairly and fully compensate Plaintiff for her losses, injuries, and damages proximately caused by the wrongful conduct of Defendants, together with pre and post judgment interest, for reasonable attorneys' fees and costs for the prosecution of this action, for punitive damages, and for any further relief this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

**MIRANDA DAWN SMITH, on behalf of the ESTATE OF ALVIS RAY SHREWSBURY**

**By Counsel**

*/s/ Russell A. Williams*
Stephen P. New (WVSB No. 7756)
Russell A. Williams (WVSB No. 12710)
New, Taylor & Associates
430 Harper Park Drive
Beckley, West Virginia 25801
Ph: (304) 250-6017
Fax: (304) 250-6012
steve@newtaylorlaw.com
russell@newtaylorlaw.com

Robert Dunlap (WVSB No. 10012)
Robert Dunlap & Associates
208 Main Street
Beckley, West Virginia 25801
(304) 255-4762
robertdunlapesq@gmail.com