# EXHIBIT E

# EXPERT REPORT

of the

## ALVIS RAY SHREWSBURY INCIDENT

Miranda Dawn Smith, on behalf of the Estate of Alvis Ray Shrewsbury

V

West Virginia Division of Corrections and Rehabilitation, et al.

RFI File: 23WV0031

Prepared by:

Rebekah D. Price, DNP, MSN, APRN, FNP-C

January 15, 2024



ALVIS SHREWSBURY INCIDENT

EXPERT'S REPORT                                                                                         JANUARY 15, 2024

### A. INTRODUCTION

On September 17, 2022, Alvis Shrewsbury experienced a medical emergency while incarcerated at the Southern Regional Jail at 1200 Airport Road in Beaver, West Virginia 25813. Unfortunately, Mr. Shrewsbury succumbed to this medical emergency, resulting in his passing.

The scope of my investigation was to determine if the actions/inactions of the West Virginia Division of Corrections and Rehabilitation (WVDOCR) and the Southern Regional Jail (SRJ) complied with the standard of nursing care in the medical treatment of Mr. Alvis Ray Shrewsbury on September 17, 2022.

The defendants in this matter include the West Virginia Division of Corrections and Rehabilitation (WVDOCR) and its named employees: Nicholas Burton, Aaron Johnson, & Johan Radosevich; Wexford Health Sourced, Inc. and its named employees: Erica Sizemore, LPN, Ashley Stroup LPN, and Beth Waugh, LPN.

My investigation into this matter and the preparation of this report was performed at the request of Stephen New, Esq. of Stephen New and Associates Law Office.

### B. QUALIFICATIONS

I have an active nursing license in Colorado and have also held state licenses in South Carolina, Indiana, and West Virginia. I am a board-certified Family Nurse Practitioner (FNP). I have an active state NP license in Colorado and have also held state licenses in South Carolina and North Carolina. I earned my Bachelor of Science in Nursing from Mercer University in Atlanta, Georgia. I earned my Master of Science in Nursing degree (with emphasis as a Family Nurse Practitioner) from Indiana State University in Terre Haute, Indiana. I earned my Doctor of Nursing Practice degree from Indiana State University in Terre Haute, Indiana. This is the highest clinical degree in Nursing.

I am presently a nurse practitioner and healthcare expert at Robson Forensic. A nurse practitioner (NP) is an advanced practice registered nurse with extensive education, experience, and training in assessing patient needs, ordering diagnostic and laboratory tests, diagnosing disease, and formulating and prescribing medications and treatment plans. The NP education is centered on disease prevention, coordination of care, and health promotion. I continue to practice clinically as a nurse practitioner and assist in training nursing staff of various levels, including healthcare technicians.

I have over 17 years of experience in patient care and regulatory compliance. In addition, I have hands-on experience in many inpatient and outpatient environments, including nursing homes, long-term care facilities, hospitals, home health care, rehabilitation facilities, hospice facilities, group homes, and collaboration with correctional facilities. I have worked as an agency nurse in many different settings, working in short-staffed facilities that needed outside medical providers to meet the needs of the patients



within each facility. I am familiar with emergency nursing algorithms and protocols for emergency response, and I have nursing supervisory experience. I have worked as an agency nurse in numerous environments. I apply my expertise to forensic casework involving the standard of care for nurses and nursing staff (including RNs, LPNs, and CNAs) related to injuries, abuse, and neglect in various inpatient and outpatient healthcare environments, including collaborations with institutional corrections facilities.

My CV outlining my complete education, experience, and training is attached separately.

The approach taken for the analysis of this investigation is based on reliable scientific reasoning and methodology, which is accepted by the scientific community. My opinions are offered within a reasonable degree of nursing certainty, relying on science industry principles and practices. My opinions are subject to change if additional information becomes available.

Terms of Compensation

The professional service fees Robson Forensic, Inc. charges for all tasks I have undertaken in this case are currently $505 per hour, subject to change.

Testimony as an Expert

Attached in Appendix 1.

C. MATERIALS AVAILABLE FOR REVIEW

See Appendix 2

D. BACKGROUND

The Southern Regional Jail (SRJ) is in Beaver in Raleigh County. This facility, built in 1994, serves seven counties in the southeastern part of West Virginia. It is part of the West Virginia Division of Corrections & Rehabilitation (WVDOCR).[1]

The nursing staff working at SRJ attends to the medical needs of inmates. During Alvis Shrewsbury's 19 days (8/29/22-9/17/22), Wexford Health Sources, Inc. - a staffing agency - provided nursing staff to cover the staffing requirements.

During the time Mr. Alvin Shrewsbury was an inmate in the WVDOCR at the SRJ, the following Licensed Practical Nurses (LPN) and Certified Nursing Assistants (CNA) were part of the nursing staff included in the care of Mr. Alvin Shrewsbury:

---

[1] https://dcr.wv.gov/facilities/Pages/prisons-and-jails/srjcf.aspx



- Tiffany Mullins, LPN. She was employed by Wexford Health Sources, Inc. and assigned to work in the SRJ.
- Hanna Cockrean, LPN. She was employed by Wexford Health Sources, Inc. and assigned to work in the SRJ.
- Staci Perry, CNA. She was employed by Wexford Health Sources, Inc., and was assigned to work in the SRJ.
- Erica Sizemore Wade, LPN. She was employed by Wexford Health Sources, Inc., and was assigned to work in the SRJ.

### E. DESCRIPTION OF THE INCIDENT

Due to discrepancies in testimony and written documentation by staff, I included the written description of key stakeholders involved in Mr. Shrewsbury's treatment on September 17, 2022.

As described by Staci Perry, CNA, about the incident:

> "I, Staci Perry, was working my shift as CNA in the booking department when at approximately 0005hrs, CO Ryan Walls called for officers and medical in C5. Upon arrival, Corporal Jonah Radosevich, Correctional Officer Aiden Jarrell, and myself witnessed inmate Alvis Shrewsbury OID# 3419295, sitting on the toilet with his cell mate pouring water over him. Cpl Radosevich immediately locked the pod down, and asked Shrewsbury's cell mate to exit the cell and find another cell to go to. Shrewsbury then tried to stand to talk to us, but became dizzy and fell backwards onto his mat. At this time Sargant Williams, and LPN Tiffany Mullins arrived with the emergency crash cart. Vitals were obtained, charting at P-45, O2-76, and BP-140/76. When asked what he was feeling, Shrewsbury stated that he was dizzy, and was having some chest pain. He also stated that he felt an involuntary bowel movement occurring. Pt denies having taken any drugs. LPN Tiffany decided that due to his low pulse and o2 levels, he should be sent to the hospital to be seen by a doctor. CO Jarrell went to retrieve the wheel chair at this time to take the pt to booking and wait for EMS to arrive. Upon assisting the pt to a standing position, we noticed a large amount of tarry, bloody stool exceeding from the pts pant legs. To LPN Tiffany and myself, this appeared to be a GI bleed. EMS was called at 0021hrs while pt was being wheeled to the booking department bathroom. After arriving in the booking department, Cpl Radosevich took the pt to the booking bathroom and attempted to assist the pt in showering and changing his clothes. Shortly after going into the bathroom, Cpl Radosevich yelled for me to get in there because the pt had lost consciousness. I handed Sgt Blake some ammonia capsules to use to try to get a response from the pt. While she was doing that, LPN Tiffany was called back to booking at 0027hrs. When she arrived we tried to obtain another set of vitals. Vitals were charted P-35, O2-76, BP was unobtainable at this time. At approximately 0040hrs, we lost pts pulse, Sgt Blake started compressions, switching out with Cpl Radosevich for breaks, I grabbed the Ambu bag to give breaths. EMS arrived on scene at 0040hrs and took over compressions. They placed AED and a LUCAS (Mechanical Chest Compression Machine) on pt Shrewsbury while still in the booking department bathroom. EMS departed our facility at 0057hrs. At 0209hrs Barh called to report that Alvis Shrewsbury's time of death was recorded at 0207hrs."[2]

---

[2] Nursing Chart Notes Written by Staci Perry, CNA, on 9/17/22



As described by Tiffany Mullins, LPN, about the incident:

> "Medical response- (LPN Tiffany Mullins writing report on Beth Waugh OIS due to no access) I LPN Tiffany Mullins was working my shift in medical CO Ryan Walls called for officers and medical in C5 cell 16. Sgt Jared Williams came to medical and we grabbed the crash cart and proceeded to c-5. CNA Staci Perry Cpl Jonah Radosevich and CO Aiden Jarrel were in the cell and the inmate was lying on his bed pale sweating and had a rash on his right shoulder. I obtained vitals BP 140/76 O2/76 HR 45. I asked the inmate what other symptoms he was having and he stated chest pain and dizziness and that he needed to have a bowel movement. Pt denied any drug use. My nursing recommendation was to send him out to the hospital because of low O2 and HR. Jarrel went to get a wheelchair to transport pt to booking. When pt stood up black tarry blood leaked from him which appeared to be a GI bleed. I ran to call the doctor on call Rashid at 0017 no answer called DON at 0020 Beth Waugh made aware of situation and she said call the next doctor on call. Called Baldera at 0023 no answer, called Dr Martin at 0024 said send out. Staci called EMS while I was on phone at 0021. The pt was took to booking during this time to be cleaned up. At 0027 Cpl Radosevich called an emergency in the booking bathroom. Upon arriving in booking the pt had passed out. Sgt Blake popped ammonia capsules to try and get pt to come too while I monitored vitals which were as follows HR 35 and O2 76 BP not containable. I also applied oxygen. Pulse was lost at 0040 and Sgt Blake started compressions and alternated with Cpl Radosevich. Sgt Williams called EMS to have them get to facility stat and to inform them of status of pt. At approximately 0042 EMS arrived and took over compressions. EMS took pt out at 0057. I called Barh and gave pt report. At 0209, Barh informed us that Dr. Geary announced the time of death on Alvis Shrewsbury at 0207."[3]

As described by Beckley ARH Emergency Department, about the incident:

> "This patient is a prisoner at the local jail presents in full cardiac arrest with CPR in progress. All History of Present Illness and review of symptoms per the prison guard that was on scene and now at bedside. Also per EMS: Report from the jail was that the patient had felt hot and then stood up next to the guard felt a gush come down his pants he started bleeding heavily rectally. The guard denied that there was any trauma. Patient was taken to the shower at this time per his report and was washing off and then collapsed and arrested. They also report that they did CPR for 30 minutes prior to EMS arrival. EMS did 30 minutes of CPR on the way to the hospital. They had applied the Lucas device for chest compressions. That placed a left tibial IO line. There was an oral airway for Ambu bag ventilation, but the patient was not intubated."[4]

As described by the Initial After-Action Report, written by Major H. Withrow:

1. Inmate who is deceased is Inmate Alvis Shrewsbury, DOB: ▇▇▇▇▇ Last known address box 171 Bud Wv (Wyoming Co)
2. Shrewsbury was being held on a Driving Revoked 2nd Offense. He was booked into the facility on 29 August 2022 at 1600 hours.
3. Last observed by Officer Aiden Jerrell at 1150 hours on 09-16-22 during count. His cellmate at the time was James Vert #3661733 who was present in the cell at the time of the incident.

---

[3] Nursing Chart Notes Written by Tiffany Mullins, LPN, on 9/17/22.
[4] Beckley ARH, Emergency Department Notes, on 9/17/22



4. At 0003 hours, on 09-17-2022, Shrewsbury is observed standing in the doorway of his cell (C-5-16); Shrewsbury then can be seen on camera falling backward to the cell floor. His feet are still within camera view.
5. Several inmates who were sitting at the dayroom table rush to his aid. Shrewsbury can then be seen being helped up and sat on the toilet. SRJ Staff is then alerted by an inmate in section C-5.
6. 0005 to 0008 hours, The following staff members respond. Officers Jonah Radosevich, Aiden Jerrell, Sgt. Jared Willimas, Nurses Staci Perry and Tiffany Mullins enter the section to provide care. Inmate Shrewsbury is able to communicate with them.
7. 0017 hours, It was determined that inmate Shrewsbury will need to be sent to a hospital, Facility cameras show Staff leave the section with inmate Shrewsbury in a wheelchair enroute to the booking department to meet EMS. Shrewsbury is alert and talking to them.
8. While in the booking department, Staff take him to the shower area and attempt to help him clean up and give him fresh clothing prior to the arrival of EMS, however inmate Shrewsbury's health continued to decline.
9. 0042 hours, EMS arrives. Staff have already had to start life-saving measures (CPR).
10. 0056 hours, EMS departs the booking department with inmate Shrewsbury on a gurney.
11. 0207 hours, notification received to SRJ Shift Commander that inmate Shrewsbury has been pronounced dead..."[5]

## F. ANALYSIS

### Emergency Response Plan

Mr. Shrewsbury experienced a sudden medical emergency on the incident of September 17, 2023, which included physical complaints of chest pain, a sudden urge to defecate followed by profuse bleeding through his rectum, dizziness, and sweating. He fell backward and onto the floor in such a manner that alerted others of the emergency and prompted them to seek help.[6]

The National Commission on Correctional Health Care (NCCHC) describes the standard of care with respect to requirements for health services in jails. In section J-D-07,[7] the Emergency Services and Response Plan, the NCCHC defines "Emergency" as a medical, dental, or mental health need for an acute illness or an unexpected health need that cannot be deferred until the next scheduled sick call or clinic. The standard for health care staff is to plan for emergency health care by ensuring all staff are prepared to respond to emergencies effectively. To stay in compliance with this standard, The NCCHC states that the facility should do the following:

1. The facility provides 24-hour emergency medical, dental, and mental health services.
2. Facility staff provide emergency services until qualified health care professionals arrive.
3. The health aspects of the documented emergency response plan are approved by the responsible health authority and facility administrator, and include, at a minimum:
    a. Responsibilities of health staff
    b. Procedures for triage for multiple casualties

---

[5] SWVDOCR Initial After Action Report, written by Major Hal Withrow on September 17, 2022.
[6] Deposition of Tiffany Mullins, dated December 13, 2023, pg. 54
[7] National Commission on Correction Health Care (NCCHC) Standards, 2018, pp. 80-82



  c. Predetermination of the site for care
  d. Emergency transport of the patient(s) from the facility
  e. Use of an emergency vehicle
  f Telephone numbers and procedures for calling health staff and the community emergency response system (e.g., hospitals, ambulances)
  g. Use of one or more designated hospital emergency departments or other appropriate facilities
  h. Emergency on-call physician, dental, and mental health services when the emergency health care facility is not nearby.
  i. Security procedures for the immediate transfer of patients for emergency care
  j. Procedures for evacuating patients in a mass disaster
  k. Alternate backups for each of the plan's elements
  l. Time frames for response
  m. Notification to the person legally responsible for the facility
4. Mass disaster drills are conducted so that each shift has participated over a 3-year period, including satellites.
5. A health emergency man-down drills practiced once a year on each shift where health staff are regularly assigned, including satellites.
6. The mass disaster and man-down drills are critiqued, the results are shared with all health staff, and recommendations for health staff are acted upon.
7. All aspects of the standard are addressed by written policy and defined procedures.[8]

For WVDOCR and SRJ to stay compliant, they must show staff competency (based on adequate training) and preparedness for medical emergencies within their facility like that which Mr. Shrewsbury experienced.

When Mr. Shrewsbury was experiencing an emergency symptomatic event, the lack of urgency and timeliness in the staff's response at SRJ was inadequate and fell below the NCCHC standard of care for emergency response. This failure to act in a timely manner and to provide appropriate emergency medical treatment delayed and denied Mr. Shrewsbury the life-sustaining treatment he needed.

**Chest Pain Protocol**

The Wexford Companies Nursing Treatment Protocols are used as guidelines for symptomatic events. Included in these protocols is their Chest Pain Protocol. Included in this Chest Pain Protocol,[9] the nursing staff are required to accurately determine medical care to the patient by assessing, gathering, and documenting the following in the record:

  1. How long has the pain been present?
  2. How did it start (i.e., with activity, at rest, etc.)?
  3. Any past medical history of family history of heart problems?
  4. Describe the pain (sharp, knife-like, tightness, squeezing, dull, stabbing, etc.)
  5. Any recent injury or muscle strain to the chest?
  6. Any associated symptoms? (Nausea, vomiting, dyspnea, dizzy, diaphoresis)

---

[8] National Commission on Correction Health Care (NCCHC) Standards, 2018, pp. 80-82
[9] The Wexford Companies Chest Pain Protocol, WEX001289, pp. 44-46



7. Pain level (1–10): At worst? Present?
8. What relieves the pain? What intensifies the pain (coughing, breathing, activity)?
9. Allergies (foods/meds)
10. Pain/numbness radiating to arm, shoulder, mandible, or neck
11. Family history or personal history of cardiac disease

There is no evidence that this was completed nor documented by any nursing staff working at SRJ on September 17, 2021. Furthermore, it is important to note that Erica Sizemore Wade, LPN, attended to Mr. Shrewsbury approximately fourteen hours before his passing in response to new symptoms of nausea, vomiting, diarrhea and sweatiness.[10] In her testimony, Ms. Sizemore acknowledged that she neglected documenting the visit, including recording his vital signs or subjective complaints.[11] Ms. Sizemore's failure to properly assess and document and properly assess Mr. Shrewsbury's condition violates the standard of nursing care. Documenting information specific to the individual patient, like Mr. Shrewsbury, provides all medical personnel with critical data to apply appropriate medical interventions.

Wexford had its own chest pain protocols.[12]

*For objectives to be met, the chest pain protocol states:*

A. The nurse will examine the patient and document the following in the record:
   1. Temperature, pulse, respirations, blood pressure, and weight
   2. EKG
   3. Check the heart rhythm; note any irregularities
   4. Auscultate the lungs
   5. O2 Sat
   6. Evaluate level of distress: mild, moderate, or severe
   7. Note general appearance (diaphoretic, SOB, skin coloring, fatigued)
   8. Note general orientation: alert, oriented, confused, or disoriented
   9. Observe for the following objective conditions and document presence or absence of:
      a. Shortness of breath
      b. Abnormal vital signs
      c. Diaphoresis
      d. Dizziness
      e. Nausea/vomiting
      f. Cyanosis
      g. Weakness
      h. Skin color (pink, mottled, cyanotic, gray, pale, flushed)
      i. Skin temperature (warm, hot, cool, clammy, dry)
      j. Swelling or edema in lower extremities, note if either is apparent in 1 or both extremities.

---

[10] The deposition of Erica Wade on December 1, 2023, pp.16-17.
[11] The deposition of Mary Stone on December 13, 2023, pp. 49-52
[12] The Wexford Companies Chest Pain Protocol, WEX001289, pp. 44-46



Had Tiffanie Mullins, LPN, a staff member of Wexford's agency, received adequate and effective training on Wexford's chest pain protocol, she would have been equipped to activate the protocol, accurately assess Mr. Alvin Shrewsbury's medical condition, and initiate life-sustaining measures. A proper assessment would have allowed her to identify Mr. Shrewsbury's cardiac event, recognize the severity of the situation, follow the directed protocol, and implement the appropriate interventions that were required. There is no evidence to suggest that this assessment was completed. The staff at WVDOCR and SJR, including Tiffanie Mullins, LPN, failed to meet these requirements, thereby delaying and denying Mr. Shrewsbury critical life-saving treatment. Her failure to adequately assess Mr. Shrewsbury violated the nursing standard of care.

An EKG is a vital test that detects irregular cardiac rhythms, while an AED is crucial in treating sudden cardiac events.[13] This AED evaluates the heart's rhythm and, if necessary, delivers an electric shock, or defibrillation, to restore the heart's normal function. These medical devices are included in the chest pain protocol and used in cardiac emergencies. The evidence shows that although Mr. Shrewsbury's vital signs were evaluated, there was a lack of effort to perform an EKG or obtain an AED. Tiffany Mullins, LPN, in her testimony, agrees more could have been done, and the failure to provide medical emergency services until EMS got there violates the NCCHC standard of care.[14] It is important to note that the evidence shows an AED was not located on the crash cart. No attempts were made to get an AED available within the jail. The oxygen tank was found to malfunction,[15] and the emergency medication required for the chest pain protocol was not present on the crash cart.[16] The failure to provide appropriate emergency equipment on the crash cart further impeded the medical personnel from adequately assessing and treating patients during medical emergencies, as was the case with Mr. Shrewsbury.

In addition to following the basic chest pain protocol that Wexford itself had created for assessment, the staff working at SRJ failed to follow the interventions they themselves required.

As a continued part of the appropriate Chest Pain Protocol[17] interventions, the nursing staff are required to:

1. Place patient in comfortable position, preferably lying down with head up
2. Notify Physician
3. If patient does not have a contraindication to aspirin: chew 1 regular strength aspirin (325 mg)
4. Record vital signs
5. Reassure patient
6. Document status and treatment administered
7. Document history of pain, location, radiation, duration
8. Start oxygen at 2 liters/minute
9. If condition appears emergent, start IV any fluid and obtain subsequent order at 10 cc/hour
10. If condition appears emergent, administer Nitroglycerine Sublingual 0.4 mg if SBP > 100, document blood pressure reading and obtain subsequent order.
11. Be prepared to perform CPR/have AED available

---

[13] Figuero, M. (2020) https://www.aedcpr.com/articles/what-is-aed/
[14] Testimony of Tiffany Mullins, dated December 13, 2023, p.57
[15] Testimony of Tiffany Mullins, dated December 13, 2023, pp. 51-52
[16] Testimony of Tiffany Mullins, dated December 13, 2023, p. 23
[17] The Wexford Companies Chest Pain Protocol, WEX001289, pp. 44-46



Robson Forensic — THE EXPERTS

12. Hold Nitroglycerine if blood pressure is low
13. Repeat Nitroglycerine q. 5 minutes x 3
14. Heartburn – Mylanta, 1 ounce (30 ml) x 1 time
15. Further orders as per MD

The staff working at SRJ failed to lay Mr. Shrewsbury down as the chest pain protocol instructs. Instead, contrary to their own safety protocols and the education and training we receive as nurses, the staff of working at SRJ made Mr. Shrewsbury get up on his own accord (without assistance)[18] and get himself into the wheelchair (while laughing at him)[19] to go to the shower area and wash off. This intervention was inappropriate, contrary to the Chest Pain Protocol, and likely caused more cardiac strain on Mr. Shrewsbury. He then passed out and became unresponsive.[20] No medications were offered to the patient or available on the crash cart.[21]

In addition, there was no RN available that shift to be able to start an IV on Mr. Shrewsbury, as the Chest Pain Protocol requires. In her deposition, Beth Waugh, LPN, states that only an RN could start an IV, and there were no RNs on duty during this incident. Therefore, the SRJ facility created an environment that prohibited LPNs from initiating an IV and did not provide the necessary staff to administer the chest pain protocol, which could not have been followed properly and appropriately.[22]

By failing to have an RN on staff the night of Mr. Shrewsbury's medical emergency, both the WVDOCR facility, namely SJR and the Wexler agency, failed in the ability to follow their own Chest Pain Protocol in regard to assessing and reassessing patient symptoms and needs, initiating appropriate interventions and implementing safe and appropriate treatment.

**Standard of Care in Jails**

The National Commission on Correctional Health Care (NCCHC describes the standard of care with respect to requirements for health services in jails. In section J-E-08,[23] the Nursing Assessment Protocols and Procedures, the NCCHC states the nursing assessment protocols are appropriate to the level of competency and preparation of the nursing personnel and comply with the relevant state practice acts. These guidelines specify the steps to evaluate a patient's health status that drive the documentation of health records. To stay in compliance with this standard, The NCCHC states:

1. Nursing assessment protocols and nursing procedures:
    a. Are used by nursing personnel.
    b. Are appropriate to the level of competency and preparation of the nurses who will carry them out
    c. Comply with the state practice act in the facility's jurisdiction.
2. Protocols and procedures are developed and reviewed annually by the nursing administrator and responsible physician based on the level of care provided in the facility.
3. The protocols and procedures are accessible to all nursing staff.

---

[18] Surveillance Video of Booking Cameras 1-4 on 9/17/2022
[19] Inmate Shawn Adams Written Statement, no date
[20] Incident Report 004472787 Medical Response by Correctional Officer Aiden Jarrell on 09/17/2022
[21] Deposition of Beth Waugh on December 14, 2023, pp. 62
[22] Deposition of Beth Waugh on December 14, 2023, pp. 47-48
[23] National Commission on Correction Health Care (NCCHC) Standards, 2018, pp. 102-103



4. There is documentation of nurses' training in use of nursing assessment protocols and nursing procedures based on the level of care provided by the nurse. Documentation includes:
    a. Evidence that new nursing staff are trained and demonstrate knowledge and competency for the protocols and procedures that are applicable to their scope of practice.
    b. Evidence of annual review of competency
    c. Evidence of retraining when protocols or procedures are introduced or revised.
5. Nursing assessment protocols for nonemergency health care requests include over-the-counter medications only.
6. Approved assessment protocols pertaining to emergency life-threatening conditions (e.g., chest pain, shortness of breath) may contain prescription medications and must include immediate communication with a provider.
7. Emergency administration of prescription medications requires a provider's order before or immediately after administration.
8. All aspects of the standard are addressed by written policy and defined procedures.[24]

The nursing staff at WVDOCR and SRJ failed to deliver quality and competent care while acting in an unprofessional manner regarding the care given to Mr. Alvin Shrewsbury. As witnessed by inmates Brandon Lambert, Shawn Adams, Jonathan Hearn, and Daniel Bryant, all accounts of the incident are similar.

> Inmate Lambert reports that the nurses laughed at Mr. Shrewsbury during the emergency incident and told him to get in the wheelchair without help.[25]
>
> Inmate Shawn Adams states in his account, "I was laying in my bunk in 14 when I heard Shrewsbury fall down. I got up, looked in the window, and watched Darkside try to help him by putting water on his neck and keeping him calm. There was blood everywhere. The CO's and nurses came in screaming at the inmates to get in their cells and to "Shut the fuck up", They subsequently began laughing at Shrewsbury and yelling at him to get in the wheelchair under his own power. It was the most disgusting display of unprofessionalism and dereliction of duty and complete disregard for human life I have ever been unfortunate enough to witness. It will haunt me the rest of my life."[26]
>
> Inmate Jonathan Hearn reports "...the night he passed out here the guard and nurses was making fun of him and would not help him up made him get up in the wheelchair himself which was some bullshit he also told us he was asked to be moved several times and they wouldn't do it."[27]
>
> Inmate Daniel Bryant states, in his written statement, "The night Mr. Shrewsbury died, I was playing cards when we heard him fall. Ryan Blessard, myself, and Vest ran to him and called for medical. Medical arrived and made us all leave. And started treatment. They watch him poop all over the placed, blood and fecise [sic] everywhere. And laughed at him when he couldn't get in the wheel chair."[28]

---

[24] National Commission on Correction Health Care (NCCHC) Standards, 2018, pp. 102-103
[25] Inmate Brandon Lambert Written Statement, 09/20/2022.
[26] Inmate Shawn Adams Written Statement, no date given
[27] Inmate Jonathan Hearn Written Statement, 09/20/2022.
[28] Inmate Daniel Bryant Written Statement, no date given



This display of unprofessionalism and disregard for human life is blatantly contrary to the nursing profession and industry standards of care. The failure of Wexford Health Inc., WVDOCR (i.e., SRJ), and their staff to provide adequate and competent medical care to the individuals they serve created an overall culture of indifference. This is clearly demonstrated in their failure to assess and identify patient-specific risks, properly implement patient-specific interventions, and adequately document critical information regarding his health. This failure upon failure shows their deliberate disregard for their patient care and treatment. The failure to deliver quality treatment to individuals like Mr. Shrewsbury. This failure to treat patients in a humane and professional manner violated the basic standards of nursing care.

(Remainder of page intentionally left blank.)



G. FINDINGS

Within the bounds of reasonable nursing certainty and subject to change if additional information becomes available, it is my professional opinion that:

1. The nursing staff at the West Virginia Division of Corrections and Rehabilitation, Southern Regional Jail, and Wexford Health, Inc. failed to assess Alvin Shrewsbury adequately. The failure of these entities and their personnel to immediately and adequately assess his condition resulted in denying and delaying his medical treatment and contributed to his death. This created a dangerous condition that deviated from the standard of care in the nursing industry.

2. The nursing staff at West Virginia Division of Corrections and Rehabilitation, Southern Regional Jail, and Wexford Health, Inc., namely Tiffany Mullins, LPN, failed to recognize Alvin Shrewsbury's symptoms of chest pain. The failure of these entities and their personnel to recognize these symptoms resulted in a failure to initiate the chest pain protocol. Had the chest pain protocol been followed, Mr. Shrewsbury would have had the timely care he needed. This delay and denial of quality assessment and treatment violated the standard of care in a manner that contributed to his continued suffering and contributed to his death.

3. The nursing staff at the West Virginia Division of Corrections and Rehabilitation, Southern Regional Jail, and Wexford Health, Inc. failed to activate EMS in a timely manner. This failure to activate EMS promptly violated the nursing industry's standard of care.

4. The nursing staff at the West Virginia Division of Corrections and Rehabilitation, Southern Regional Jail, and Wexford Health, Inc. failed to provide written documentation of Mr. Shrewsbury's complaints, symptoms, and change of medical presentation. The failure of these entities and their personnel to document critical information in an appropriate manner deviated from the nursing industry's standard of care.

5. The nursing staff at West Virginia Division of Corrections and Rehabilitation, Southern Regional Jail, and Wexford Health, Inc. failed to deliver quality and competent care while acting unprofessionally regarding the care given to Mr. Alvin Shrewsbury. The failure of these entities and their personnel to deliver quality and competent care while treating patients like Mr. Shrewsbury in a humane and professional manner violated the nursing industry's standard of care.

_____
Rebekah D. Price

APPENDIX 1

**Rebekah Price, DNP, MSN, APRN, FNP-C**

History of Expert Testimony by Deposition or Trial

| Date | Case Name and Description |
|---|---|
| 6/2/22 | Estate of Jeanne Barker, et al. v. Brookdale Senior Living Solutions, et al. *Circuit Court of Ingham County, Michigan; Deposition* |
| 1/31/23 | Estate of Tempie Owens, et al. v. Berkshire Nursing and Rehab Center, LLC, et al. Case No. 2017-L-009349 *Circuit Court of Cook County, Illinois; Deposition* |
| 3/10/23 | Mary Owens vs. Berkshire Nursing and Rehab Center LLC No. 2017 L 009349 *Circuit Court of Cook County Illinois; Trial (declared a mistrial and will be retried)* |



Robson Forensic — THE EXPERTS

## APPENDIX 2

**Case Documents Available for Review**

**23WV0031 New-Shrewsbury/Smith**

1. Complaint
2. Defendant's Answer and Affirmative Defenses
3. Defendants Answer to Plaintiff's Complaint
4. Plaintiff's Response to Requests for Production of Documents to Plaintiff
5. Plaintiff's Response to Defendants Wexford Health Sources, Inc., Ashley Stroup, LPN, Beth Waugh, LPN, and Weic Wade, LPN's First Set of Interrogatories and Requests for Production of Documents to Plaintiff
6. Agreed Protective Order, filed 09/15/2023.
7. Final Autopsy Report Case RC-22-009 re: Alvis Ray Shrewsbury, dated 10/1/22
8. Death Certificate re: Alvis Ray Shrewsbury, dated 9/19/22
9. Letter of Administration re: Estate of Alvis Ray Shrewsbury, dated 12/14/22
10. Appalachian Regional Healthcare Records re: Alvis Shrewsbury
11. PrimeCare Medical Pre-Screening Form re: Alvis Shrewsbury, dated 3/3/21
12. PrimeCare Medical Health Screening Form re: Alvis Shrewsbury, dated 3/4/21
13. PrimeCare Medical Notification of Medical Services re: Alvis Shrewsbury, dated 3/4/21
14. PrimeCare Medical Consent to Mental Health Evaluation and Treatment via Telemedicine re: Alvis Shrewsbury, dated 3/4/21
15. PrimeCare Medical Maintain Your Personal Hygiene re: Alvis Shrewsbury, dated 3/4/21
16. PrimeCare Medical Dental Hygiene Instruction Sheet re: Alvis Shrewsbury, dated 3/4/21
17. PrimeCare Medical Education Acknowledgment Form re: Alvis Shrewsbury, dated 3/4/21
18. PrimeCare Medical Consent for West Virginia Medicaid Application, dated 3/4/21
19. PrimeCare Medical Refusal to Consent to Treatment re: Alvis Shrewsbury, dated 3/4/21
20. Wexford Health Jail Intake Immediate Intake Questions re: Alvis Shrewsbury, dated 8/29/22
21. Wexford Health Covid-19 Screening Tool re: Alvis Shrewsbury, 8/29/22
22. Wexford Health Consent for Treatment re: Alvis Shrewsbury, dated 8/29/22
23. Wexford Health Healthcare Education re: Alvis Shrewsbury, dated 8/29/22
24. Wexford Health Consent to Mental Health Treatment via Telemental Health re: Alvis Shrewsbury, dated 8/29/22
25. Wexford Health TB Consent re: Alvis Shrewsbury, dated 8/29/22
26. Wexford Health Drug Test Results re: Alvis Shrewsbury, dated 8/29/22
27. Wexford Health Release of Information Authorization re: Alvis Shrewsbury, dated 8/29/22
28. Wexford Health Consent for West Virginia Medicaid Application re: Alvis Shrewsbury, dated 8/29/22
29. Wexford Health Full Patient History re: Alvis Shrewsbury
30. Trident Care Radiology Report re: Alvis Shrewsbury #3419295, dated 9/13/22
31. Jan-Care Ambulance Records re: Alvis Shrewsbury, dated 9/17/22
32. West Virginia Division of Corrections and Rehabilitation Certified Final Jail Commitment Order re: Alvis Shrewsbury, dated 8/29/22



33. West Virginia Division of Corrections Offender Information Report re: Alvis Shrewsbury OID #3419295, dated 9/18/22
34. West Virginia Division of Corrections Offender Information Report re: James Vest OID #3661733, dated 9/18/22
35. West Virginia Division of Corrections Offender Information Report re: Brandon Lambert OID #3596276, dated 9/20/22
36. West Virginia Division of Corrections Offender Information Report re: Charles Blessard OID #3633552, dated 11/28/22
37. West Virginia Division of Corrections Offender Information Report re: Shawn Adams OID #3372141, dated 11/28/22
38. West Virginia Division of Corrections Offender Information Report re: Johnathon Hearn OID #3619676, dated 11/28/22
39. West Virginia Division of Corrections Offender Information Report re: Daniel Bryant OID #3536823, dated 11/28/22
40. West Virginia Division of Corrections Offender Information Report re: Isaiah McBride OID #3557466, dated 9/20/22
41. West Virginia Division of Corrections Offender Information Report re: Braxton Miller OID #3648207, dated 9/20/22
42. West Virginia Division of Corrections Offender Information Report re: Michael Hopkins OID #3575996, dated 9/20/22
43. West Virginia Regional Jail Authority Offender Information Report re: Alvis Shrewsbury OID #3419295, dated 9/17/22
44. West Virginia Regional Jail Authority Offender Information Report re: Alvis Shrewsbury OID #3419295, dated 3/4/21
45. West Virginia Division of Corrections & Rehabilitation Booking/Movement to Population Record re: Alvis Shrewsbury OID #3419295, dated 8/29/22
46. West Virginia Division of Corrections & Rehabilitation Booking/Movement to Population Record re: Alvis Shrewsbury OID #3419295, dated 3/3/21
47. West Virginia Jail & Correctional Facility Authority Inmate Release from Custody re: Alvis Shrewsbury OID #3419295, dated 3/4/21
48. West Virginia Division of Corrections & Rehabilitation Inmate Personal Property Inventory re: Alvis Shrewsbury OID #3419295, dated 3/3/21
49. West Virginia Division of Corrections & Rehabilitation Inmate Personal Property Inventory re: Alvis Shrewsbury OID #3419295, dated 8/29/22
50. West Virginia Division of Corrections & Rehabilitation Jail Processing Notice re: Alvis Shrewsbury OID #3419295, dated 3/3/21
51. West Virginia Division of Corrections & Rehabilitation Jail Processing Notice re: Alvis Shrewsbury OID #3419295, dated 8/29/22
52. West Virginia Division of Corrections & Rehabilitation Receipt of Inmate Identification Card re: Alvis Shrewsbury, dated 3/3/21
53. West Virginia Division of Corrections & Rehabilitation Receipt of Inmate Identification Card re: Alvis Shrewsbury, dated 8/29/22



54. West Virginia Division of Corrections & Rehabilitation Investigation 22-307 Inmate Death by Investigator Trina McKinney, initial report 1/6/23, new format 7/19/23
55. PREA Training Confirmation re: Alvis Shrewsbury, dated 3/3/21
56. PREA Training Confirmation re: Alvis Shrewsbury, dated 8/29/22
57. West Virginia Division of Corrections and Rehabilitation PREA Screening Instrument re: Alvis Shrewsbury OID #3419295, dated 3/3/21
58. West Virginia Court Disposition Reporting re: Alvis Shrewsbury, dated 3/3/21
59. Office of PREA Compliance re: Alvis Shrewsbury OID #3419295, dated 8/29/22
60. Soter RS Scanner Information Sheet, undated (x2)
61. Supervisory File Review Form re: Alvis Shrewsbury OID #3419295, dated 3/4/21
62. Supervisory File Review Form re: Alvis Shrewsbury OID #3419295, undated
63. Inmate Recap Report re: Alvis Shrewsbury OID #3419295, dated 8/31/22
64. Offender Search Results for Unit SRJ-C-5, dated 9/17/22
65. Offender Bed Assignment Associated View, dated 9/17/22
66. ViaPath Quick Report
67. Southern Regional Jail Facility Daily Housing Unit Log re: Central, dated 9/16/22
68. West Virginia Regional Jail and Correctional Facility Authority Daily Tower Log re: C Pod, undated
69. Southern Regional Jail and Correctional Facility Shift Personnel Assignments, dated September 16-17, 2022
70. Incident Report 00447289 Medical Response by Corporal Ryan Walls, dated 9/17/22
71. Incident Report 00447287 Medical Response by Correctional Officer Aiden Jarrell, dated 9/17/22
72. Incident Report 00447267 Medical Response by Corporal Johan Radosevich, dated 9/17/22
73. Incident Report 00447282 Medical Response by Sergeant Jared Williams, dated 9/17/22
74. Incident Report 00447275 Medical Response by Sergeant Jenna Blake, dated 9/17/22
75. Incident Report 00447279 Medical Response by LPN Tiffany Mullins, dated 9/17/22
76. Incident Report 00447276 Medical Response by CNA Staci Perry, dated 9/17/22
77. Incident Report 00447855 Medical Assessment by Nurse Hanna Corkrean, dated 9/20/22
78. Written Statement by Brandon Lambert, dated 9/20/22
79. Written Statement by Shawn Adams #3372141, undated
80. Written Statement by Johnathan Hearn, dated 9/20/22
81. Written Statement by Daniel Bryant, undated
82. Email from Harold Withrow re: Message from SRJ Admin, dated 9/17/22
83. Email from Harold Withrow to Jackie Binion re: Inmate Alvis Shrewsbury #3419295, dated 9/19/22
84. Division of Corrections/Rehabilitation Operations Center Duty Officer Report re: Report Number 22-2744, dated 9/17/22
85. Letter from Major Hal Withrow to Assistant Commissioner Marvin Plumley re: Hospital Transport/Inmate Death, dated 9/17/22
86. West Virginia Department of Military Affairs and Public Safety State Government Employee Compelled Statement Warning re: Nathanael Sams, dated 9/20/22
87. West Virginia Department of Military Affairs and Public Safety Miranda Warning re: Braxton Allen Miller #3648207, dated 12/5/22



88. West Virginia Department of Military Affairs and Public Safety Miranda Warning re: Dailen Defoe #3642025, dated 1/6/23
89. Audio Recording of Corporal Sams Interview, dated 9/20/22
90. Email from Jaymi Martin to Curtis Dixon re: Alvis Shrewsbury, dated 9/20/22
91. Email from Amanda Pritt to Curtis Dixon re: Message from SRJ Admin with 6 photos attached, dated 9/20/22
92. Email from Jared Williams to Jaymi Martin re: Pictures of Incident with 17 photos attached, dated 9/17/22
93. All Resident Messages for Alvis Shrewsbury #3419295, dated 9/19/22
94. Preview: Offender Bed Assignment Associated View, printed 9/20/22
95. Preview: Offender Bed Assignment Advanced Find View, printed 9/20/22
96. Surveillance Video of C5 Lower, dated 9/17/22
97. Surveillance Video of Booking Cameras 1-4, dated 9/17/22
98. Inmate Grievance #29277902 from Charles Blessard #3633552, dated 9/17/22
99. Video Call #21857205, dated 9/5/22
100. Video Call #21859682, dated 9/5/22
101. Video Call #21880685, dated 9/6/22
102. Video Call #21901619, dated 9/7/22
103. Video Call #21921033, dated 9/8/22
104. Video Call #21925762, dated 9/8/22
105. Video Call #21943896, dated 9/9/22
106. Video Call #21963177, dated 9/10/22
107. Video Call #21969797, dated 9/10/22
108. Audio Recording of James Highlander Interview by Investigator Trina McKinney, dated 9/20/22
109. Audio Recording of Joshua Fletcher Interview by Investigator Trina McKinney, dated 9/20/22
110. Audio Recording of Dailen Defoe Interview by Investigator Trina McKinney, dated 1/6/23
111. Audio Recording of Thomas Bennett Interview by Investigator Trina McKinney, dated 9/20/22
112. Audio Recording of Charles Blessard Interview by Investigator Trina McKinney, dated 9/1922
113. Audio Recording of Sidney Allen Interview by Investigator Trina McKinney, dated 9/20/22
114. Audio Recording of James Vest Interview by Investigator Trina McKinney, dated 9/19/22
115. Audio Recording of Arnold Hiller Interview by Investigator Trina McKinney, dated 9/20/22
116. Audio Recording of William Hart Interview by Investigator Trina McKinney, dated 9/20/22
117. Audio Recording of Isaiah McBride Interview by Investigator Trina McKinney, dated 6/16/23
118. Audio Recording of Braxton Miller Interview by Investigator Trina McKinney, dated 12/5/22
119. Audio Recording of LPN Hanna Corkrean Interview by Investigator Trina McKinney, dated 9/27/22
120. Wexford Chest Pain Protocol
121. CID Report & Supporting Docs
122. Deposition of Dr. Rockefeller F. Cooper, dated October 23, 2023
123. Deposition of Dr. Paul Mellen, dated January 4, 2024
124. Deposition of Jenna Blake Snyder, dated November 8, 2023



125. Deposition of Mary Stone, dated December 13, 2023
126. Deposition of Ashley Stroupe, dated December 1, 2023
127. Deposition of Trina McKinney, dated October 26, 2023
128. Deposition of Erica Wade, dated December 1, 2023
129. Deposition of Beth Waugh dated December 14, 2023.
130. Deposition of Tiffany Mullins, dated December 13, 2023
131. Deposition of Helen Perkins, dated December 12, 2023.
132. Autopsy Report of Alvis Shrewsbury dated 10/01/2022.
133. Death Certificate of Alvis Shrewsbury dated 09/30/2022.
134. BARH Medical Records for Alvis Shrewsbury dated 09/17/2022.
135. JanCare Dispatch Medical Records for Alvis Shrewsbury dated 09/17/2022.
136. WVDCR Records dated 09/29/22 – 09/17/22.
137. Office of the Chief Meical Examiner; Civil Packet, Dated December 28, 2023
138. Death in Custody Policy Directive, dated October 21, 2022
139. West Virginia Regional Jail and Correctional Facility Authority Policy and Procedure Statement Re: Death in the Jail, dated November 24, 2015
140. Wexford Defendants Deposition Summaries, dated 1/11/2024

