IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

**MIRANDA DAWN SMITH, on behalf of the**            **PLAINTIFF,**
**ESTATE OF ALVIS RAY SHREWSBURY,**

v.        **CIVIL ACTION NO. 5:23-cv-00210**
           **Honorable Frank W. Volk**

**WEST VIRGINIA DIVISION OF**            **DEFENDANTS**
**CORRECTIONS AND REHABILITATION, et al.,**

### PLAINTIFFS' MOTION IN LIMINE FOR A FINDING OF SPOILIATION AND FOR SANCTIONS AGAINST DEFENDANT WEST VIRGINIA DIVISION OF CORRECTIONS AND REHABILITATION

COMES NOW Plaintiff, by counsel, and pursuant to Fed. R. Civ. P. 30(d)(2) and L.R. Civ. P. 7.1, files this, her Motion for a Finding of Spoliation and for Sanctions against Defendant West Virginia Division of Corrections and Rehabilitation (hereinafter, the "WVDOCR") as follows:

### PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Prior to the initiation of this lawsuit, the WVDOCR was put on notice of a potential claim regarding incidents relating to the incarceration and eventual death of Alvis Shrewsbury, an inmate at Southern Regional Jail (hereinafter "SRJ") and advised of its duty to preserve relevant evidence. On March 6, 2023, an evidence preservation letter was sent to the West Virginia Division of Corrections and Rehabilitation (hereinafter "Defendant WVDOCR") addressed to Commissioner William K. Marshall, *See* Evidence Preservation Letter, attached hereto as Exhibit 1. Then, on March 15, 2023, Plaintiffs filed their Complaint, alleging the several causes of action in this action which injured and culminated in the untimely and preventable death at SRJ [ECF No. 1].

On October 27, 2023, Plaintiff filed discovery requests on Nicholas Burton and other WVDOCR defendants [ECF No. 86], requesting tower logs for September 16th and 17th of 2022, as well as any and all photographs, memoranda, videotapes, and any other recording or film which in any way depict the Plaintiff in {Defendant's} care, custody or control.  Defendants collectively answered Plaintiff's first set of discovery requests on November 27, 2023, objecting that such requested material was not in the Defendants' custody and control, but without waiving that objection purported to have provided the information previously; however, no video, recordings, or films have ever been produced by Defendants' depicting Alvis Shrewsbury's escort from his cell, through halls, and to medical on September 16, 2022, which event Defendant Erica Sizemore (now Wade) claims to have happened, but for which there are no medical records, no other witnesses, and because of the failure to preserve video and/or transfer and daily logs reflecting this alleged transfer, no written logs or tower logs by which to test Defendant Sizemore's (now Wade) testimony.  Two supplemental responses also failed to produce the aforementioned evidence [ECF 160, 172].

Additionally, Defendant WVDOCR willfully and intentionally destroyed all evidence contained in the email accounts of three now-separated former employees, Officer Jarrell, Officer Johnson, and Superintendent Francis.

**LEGAL STANDARD**

"Spoliation of evidence refers to 'the destruction or material alteration of evidence or to the failure to preserve properly for another's use as evidence in pending or reasonably foreseeable litigation.'" *In Re Ethicon, Inc. Pelvis Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 511 (S.D. W.Va. 2014) (quoting *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)).  "The duty to preserve evidence arises 'not only during litigation but extends to that period before the

litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.'" *Id*. (quoting *Silvestri*). "Once the duty is triggered, the party should 'identify, locate, and maintain information that is relevant to specific, predictable, and identifiable litigation' and 'notify the opposing party of evidence in the hands of third parties.'" *Id*. (citation omitted).

"The failure of a party in a federal proceeding to preserve material evidence may result in the imposition of sanctions under Fed. R. Civ. P. 37, or through the court's inherent authority to 'control the judicial process and litigation.'" *Id*. (citation omitted). "In the Fourth Circuit, sanctions for spoliation are appropriate when the moving establishes that: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a culpable state of mind; (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Id*. at 511-512 (citation and internal quotation omitted).

"The district court has broad discretion when selecting a sanction for spoliation; however, 'the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine.'" *Id*. at 512 (quoting *Silvestri*).

### ARGUMENT AND CITATION OF AUTHORITY

In the present case, the conduct of Defendant Sandy, Defendant Douglas, the WVDOHS, and the WVDOCR resulted in the knowing destruction of relevant evidence for which sanctions must be imposed.

**A. Defendants Have A Duty To Preserve Relevant Evidence.**

The first factor a court must consider when determining if spoliation has occurred is whether the party having control over the evidence "had an obligation to preserve it when it was destroyed or altered." *See id*. at 511-512; *see also Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013) ("[a] party seeking sanctions based on the spoliation of evidence must establish, *inter alia*, that the alleged spoliator had a duty to preserve material evidence"). Here, there is no question that Defendant WVDOCR failed to preserve or produce video recordings depicting the alleged escort of Alvis Shrewsbury to medical on September 16, 2022, failed to preserve or produce video recording of Alvis Shrewsbury's alleged interaction with Defendant Erica Sizemore (now Wade), and failed to preserve or produce daily logs, tower logs, or written transfer records reflecting movement of Alvis Shrewsbury on September 16, 2022.

"The duty to preserve evidence contains two distinct components. The first component is the event that triggers the duty. In other words, when should the party *reasonably* have anticipated litigation?" *Id*. at 512 (original emphasis). "It is well established that the duty is triggered, at the least, when the defendant is served with the complaint." *Id*.; *see Turner*, 736 F.3d at 282 ("[g]enerally, it is the filing of a lawsuit that triggers the duty to preserve evidence"). "Before litigation begins, courts agree that the receipt of a demand letter, a request for evidence preservation, a threat of litigation, or a decision to pursue a claim will all trigger the duty to preserve evidence." *Id*.; *see Turner*, 736 F.3d at 282 (holding that a document preservation letter or letter threatening litigation triggers a duty to preserve evidence).

In the present case, Defendants duty to preserve evidence was triggered as early as the event of Alvis Shrewsbury's death itself. That certainly triggered internal investigations, and was of similar enough character to then-ongoing claims and litigation that the failure to reasonably appreciate the likelihood of resulting litigation. Another triggering event occurred on March 6,

2023, when William K. Marshall, III, Commissioner of Defendant WVDOCR was served with an evidence preservation letter by counsel for Plaintiffs.  *See* Ex. 1.  Without question, a duty to preserve evidence was likewise triggered when the original Complaint was filed on March 13, 2023 [ECF No. 1].  Given the number of deaths at Southern Regional Jail, the existence of multiple claims and litigation taking place due to deaths and other circumstances at Southern Regional Jail, the preservation requests and notices pending in other civil rights litigation, and the existence of a prior preservation letter and requests for all videos and other recordings from Southern Regional Jail, the evidence missing from the WVDOCR defendants' responses ought to have been preserved from September 17, 2022, as the WVDOCR should have reasonably anticipated litigation.

The second component of a duty to preserve evidence is, "what must be preserved?" *See In Re Ethicon*, 299 F.R.D. at 517.  "A proper analysis of this component requires the Court to determine reasonableness under the circumstances…and that in turn depends on whether what was done – or not done – was *proportional* to that case and consistent with clearly established standards." *Id*. at 518 (citation omitted) (original emphasis).

The nature of this event, the death of inmate Alvis Shrewsbury, prompted internal investigations which accompany a critical incident and inmate death.  During the investigation into Alvis Shrewsbury's incarceration and death, the relevance of all video and recordings of Alvis Shrewsbury's movements and which depicted Alvis Shrewsbury ought to have been obvious.  Further, daily and tower logs regarding his placement and movements ought likewise to have been obviously relevant.  The initial reports included inmate references to beatings which had be perpetrated against Alvis Shrewsbury and the investigation revealed bruises, blacked eye, and the need for x-rays.  Obviously, video and records of Alvis Shrewsbury's movements to or from medical on September 16, 2022, were quite relevant.

Defendants' discovery response that they were not in custody or control of the requested video and recordings depicting Alvis Shrewsbury does not end the analysis. Nevertheless, "[i]f a party cannot fulfill this duty to preserve because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence." *Silvestri*, 271 F.3d at 591.

### B. Defendants Breached Their Duty To Preserve Material Evidence.

"A party breaches its duty to preserve evidence if it fails to act reasonably by taking positive action to preserve material evidence…The action must be reasonably calculated to ensure that relevant materials will be preserved, such as giving out specific criteria on what should or should not be saved for litigation.'" *In Re Ethicon*, 299 F.R.D. at 518 (citation omitted). "Once the duty to preserve attaches, any destruction of material evidence within the party's control is a breach of that duty." *Id*. (emphasis added).

It is beyond dispute that Defendants breached their duty to preserve material evidence within their control by failing to preserve, in the face of inmate Alvis Shrewsbury's death, video recordings of his movements to or from medical and tower or daily logs reflecting any such movement.

### C. Culpability: Defendants' Spoliative Conduct Was Willful And Done In Bad Faith.

The second factor a court must consider when determining if spoliation has occurred is whether "the destruction or loss was accompanied by a culpable state of mind." *See id*. at 511-512. There is little question that Defendant WVDOCR meet this requirement here. The same

defendant has already been recommended for sanction for similar conduct with regard to failures to preserve video recordings and the purging of emails during ongoing litigation.

"In the Fourth Circuit, for a court to impose some form of sanctions for spoliation, any fault – be it bad faith, willfulness, gross negligence, negligence, or ordinary negligence – <u>is a sufficiently culpable mindset</u>." *Id*. at 519 (citation omitted) (emphasis added). "Negligent spoliation 'has been found in cases where a party failed to properly preserve, collect, and review evidence, resulting in the destruction of relevant materials.'" *Id*. (quoting *Felman Production, Inc. v. Industrial Risk Insurers*, 2011 Dist. LEXIS 112161, *12 (S.D. W.Va., Sept. 29, 2011)). "Gross negligence is the same as ordinary negligence, except in degree…[while] willfulness and bad faith require intentional, purposeful, or deliberate conduct." *Id*. (citation omitted).

"The fundamental element of bad faith spoliation is advantage-seeking behavior by the party with superior access to information necessary for the proper administration of justice." *Id*. (citation omitted). "While bad faith requires destruction for the purpose of depriving the adversary of the evidence, for willfulness, it is sufficient that the actor intended to destroy evidence." *Id*. (citation omitted).

In the present case, the spoliative conduct of Defendants was obviously willful. This was not a situation where a party negligently "failed to preserve" evidence, like when electronically stored information is automatically overwritten by mistake. Here, we are dealing with a defendant, in the WVDOCR, which, as noted above, has already run afoul of preservation duties in similar litigation resulting in a lengthy and pointed recommendation of sanctions including the ultimate sanction of the entry default judgement, although no such judgment has been entered as the parties thereafter reached a proposed settlement.

Further evidence of Defendant WVDOCR's willfulness is the actual destruction of evidence. It is well-established in findings made by Federal Magistrate Omar J. Aboulhosn following an October 2, 2023, hearing in Case No. 5:22-cv-00405 that Defendant WVDOCR purges the email history and archives of separated employees, which in this matter would include Officers Jarrell and Johnson, both of whom were directly involved with Alvis Shrewsbury, and both of whom worked at Southern Regional Jail during Defendant Wexford's time as the medical services provider at Southern Regional Jail. Furthermore, this email purge would include Superintendent Mike Francis, who has been outspoken after the onset of various litigation concerning civil rights violations and other issues at Southern Regional Jail, and who was superintendent during a portion of Wexford's time as medical services provider. As is more fully discussed below, the email purge deprived Plaintiff of a valuable avenue of discovery.

**D. The Evidence Destroyed By Defendants Was Relevant To A Pending Lawsuit.**

The next consideration for the Court is whether evidence which was not preserved "… was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence..." *Id*. at 511-512 (citation omitted). "In the context of spoliation, lost evidence is relevant if a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Id*. at 521 (citation omitted). "Once the moving party shows that the spoliated material [is relevant], the burden to show otherwise falls on the party charges with spoliation." *E.I. Dupont de Nemours v. Kolon Industries*, 803 F. Supp. 2d, 469, 498-99 (E.D. Va. 2011).

It is indisputable that the missing evidence is relevant to Plaintiff's claims. Herein, Plaintiff asserts that Alvis Shrewsbury died, at least in part, due to medical neglect, civil, rights violations, and a conspiracy between the various defendants to violate said rights. Missing evidence includes

not just tower/daily/movement logs, not just missing video recordings of Alvis Shrewsbury on September 16th, but also the intentionally purged email accounts and history of all emails of separated employees, Officers Jarrell and Johnson, and Superintendent Francis.

Because of missing video recordings, Plaintiff is unable to identify and depose the officer or officers who allegedly escorted Alvis Shrewsbury to medical on September 16, 2022, and therefore unable to ascertain what Alvis Shrewsbury's complaint and condition were which led to his alleged transfer to medical in the first place. Was he complaining then of chest pain? No one will ever know, and no one has any avenue to find out. Was he in a weakened condition which may have been reflected in the missing video recordings? Again, no one will ever know, and no one has any avenue to find out.

Because of missing tower/daily/movement logs reflecting Alvis Shrewsbury's alleged trip to medical on September 16, 2022, Plaintiff has no way to depose his escort, no way to confirm even that he was transferred to medical on the date in question, and no way to refute or confirm the alleged time of said trip to medical. Furthermore, the missing logs might have indicated a cause for the transfer to medical, but as with the missing video recordings, Plaintiff has been deprived of the opportunity to discover such.

Because of the purged emails of Correctional Officer Johnson, Correctional Officer Jarrell, and Superintendent Francis, Plaintiff cannot ever discover whether any of the three drafted, received, or responded to emails related to complaints about medical conditions, treatments, timeliness, responsiveness or care of or for Alvis Shrewsbury or in general.

Did Superintendent Mike Francis engage in email communications which were critical of Wexford? We will never know and there is no way to know what such emails were or might have been.

What emails were destroyed following the separation of Officer Jarrell, who witnessed Alvis Shrewsbury's medical emergency which preceded his death? Again, we will never know and cannot.

What emails were destroyed after the separation of Officer Johnson? Again, we will never know and cannot know.

### E. **Plaintiffs Are Prejudiced By Defendant WVDOCR's Willful Destruction Of Evidence.**

"The concept of relevance includes a second prong; that being, the prejudice flowing from the loss of evidence." *See In Re Ethicon*, 299 F.R.D. at 522. "The extent of the resulting prejudice to the innocent party and the spoliator's degree of culpability are key factors in determining the appropriate sanction to impose for spoliation of evidence." *Id*. "A measure of appropriateness of a sanction is whether it restores the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Id*. (citation omitted).

"Spoliation of evidence causes prejudice when, as a result of the spoliation, the party claiming spoliation cannot present evidence essential to its underlying claim." *Id*. (citation omitted). "The party moving for sanctions bears the burden of demonstrating prejudice, although the burden placed on the moving party to show that lost evidence would have been favorable to it ought not be too onerous, lest the spoliator be permitted to profit from its destruction." *Id*. (citation omitted).

Here, Plaintiffs have undoubtably been prejudiced by Defendants' knowing, willful destruction of evidence. As noted above, certain evidence cannot be obtained via any other source. Video evidence to refute Erica Wade's anticipated testimony was not preserved or turned over to

Plaintiff. Tower or daily logs reflecting movement were not preserved or turned over and therefore are not a source of information which Plaintiff ought t have had. The loss of the purged email account is enormous. Emails from the purged accounts are forever lost despite the fact that persons in the decision chain at WVDOCR knew or should have known that it was " … a good idea to keep those emails for discovery and FOIA requests." *See*, 5:22-cv-00405, ECF 774, pg 14 (reflecting as stated).

Thus, because this original evidence has been destroyed by Defendant's purge, Plaintiff is deprived of discovery, inspection, and the opportunity to present the evidence to the Court. The destruction of this evidence has irreparably harmed Plaintiffs and prejudiced the prosecution of their case.

Accordingly, Plaintiffs have established that Defendants had a duty to preserve material evidence; that Defendants breached that duty; that Defendants acted willfully and in bad faith; that the evidence destroyed was relevant to Plaintiffs' claims; and that Plaintiffs have been prejudiced by Defendants' destruction of evidence. Therefore, the Court should grant the present Motion and find Defendants guilty of spoliation of evidence. *See id*. at 511-12 (citation omitted).

### F. Sanctions

"A district court has broad discretion to impose sanctions for spoliation of relevant evidence…" *Id*. at 524. However, "the sanction imposed should be no harsher than that necessary 'to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine.'" *Id*. (quoting *Silvestri*, 271 F.3d at 590). "Put another way, appropriate sanctions should (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who

wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party. *Id*. (citation omitted). Nevertheless, when imposing sanctions for spoliation, the trial court has "discretion to pursue a wide range of responses both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct." *Silvestri*, 271 F.3d at 590 (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)).

"Determining whether sanctions are warranted, and if so, what they should include, requires a court to consider both the spoliating party's culpability and the level of prejudice to the party seeking discovery." *Id*. (citation omitted). "Both culpability and prejudice can range along a continuum…[and] [a] court's response to the loss of evidence depends on both the degree of culpability and the degree of prejudice." *Id*. (citation omitted).

## **CONCLUSION**

At a minimum, sanctions should include an adverse inference that all missing video recordings, all missing tower/transfer logs, and the purged email accounts of Officer Johnson, Officer Jarrell, and Superintendent Francis contained material favorable to Plaintiff and tended to prove or support elements of Plaintiff's required proofs against all defendants, including inferences that the purged emails included admissions of civil rights violations, failure to protect, and failure to act in the interests of Alvis Shrewsbury.

Given the history of this defendant with regard to discovery abuse, preservation failures, and the outright destruction of evidence, the destruction of video recordings and the destruction

of email records merits default judgement because this Plaintiff is deprived of legitimate sources of proof of her claims on behalf of the Estate of Alvis Shrewsbury, for which there can be no other reparation.

**MIRANDA DAWN SMITH,**
**By Counsel**

/s/ Timothy P. Lupardus
Timothy Lupardus (WVSB No. 6252)
Lupardus Law Office, LC
275 Bearhole Road
Pineville, West Virginia 24874
(304) 732-0250
office@luparduslaw.com


Stephen P. New (WVSB No. 7756)
Emilee Woodridge (WVSB No. 14310)
New, Taylor & Associates
430 Harper Park Drive
Beckley, West Virginia 25801
Ph: (304) 250-6017
Fax: (304) 250-6012
steve@newtaylorlaw.com
emilee@newtaylorlaw.com


Zachary Whitten (WVSB No. 13709)
The Whitten Law Office
P.O. Box 753
Pineville, West Virginia 24874
zwhittenlaw@gmail.com

Robert Dunlap (WVSB No. 10012)
Robert Dunlap & Associates
208 Main Street
Beckley, West Virginia 25801
(304) 255-4762
robertdunlapesq@gmail.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# AT BECKLEY

**MIRANDA DAWN SMITH, on behalf of the**            **PLAINTIFF,**
**ESTATE OF ALVIS RAY SHREWSBURY,**

v.         **CIVIL ACTION NO. 5:23-cv-00210**
           **Honorable Frank W. Volk**

**WEST VIRGINIA DIVISION OF**            **DEFENDANTS**
**CORRECTIONS AND REHABILITATION, et al.,**

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiffs hereby certifies that a true and correct copy of the foregoing *PLAINTIFFS' MOTION IN LIMINE FOR A FINDING OF SPOILIATION AND FOR SANCTIONS AGAINST DEFENDANT WEST VIRGINIA DIVISION OF CORRECTIONS AND REHABILITATION* was filed with the clerk on July 29, 2024 via the Court's CM-ECF Filing System which will provide electronic notification to all counsel of record.

                                                   /s/ Timothy P. Lupardus (#6252)