UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

MIRANDA DAWN SMITH
*on behalf of the Estate of*
Alvis Ray Shrewsbury,

    Plaintiff,

v.                                                         CIVIL ACTION NO. 5:23-cv-00210

WEST VIRGINIA DIVISION OF
CORRECTIONS AND REHABILITATION, and
AARON JOHNSON, *individually as an employee
of the West Virginia Division of Corrections
and Rehabilitation*, and
JOHAN RADOSEVICH, *individually as an employee
of the West Virginia Division of Corrections
and Rehabilitation*, and
ASHLEY TONEY, *individually as an employee
of the West Virginia Division of Corrections
and Rehabilitation*, and
NICHOLAS BURTON, *individually as an employee
of the West Virginia Division of Corrections
and Rehabilitation*, and
WEXFORD HEALTH SOURCES, INC., and
ERICA WADE, *LPN, individually as an employee
of Wexford Health Sources, Inc.*, and
JOHN/JANE DOE WEXFORD EMPLOYESS, and
JOHN/JANE DOE CORRECTIONAL OFFICERS,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

    Pending is Defendants West Virginia Division of Corrections and Rehabilitation ("WVDCR"), Aaron Johnson, Johan Radosevich, Ashley Toney, and Nicholas Burton's (hereinafter, together "the WVDCR Defendants") Motion to Strike Plaintiff's Supplemental Rule

26(a)(2) Disclosures [Doc. 233], filed March 1, 2024.[1] Plaintiff Miranda Dawn Smith, on behalf of the Estate of Alvis Ray Shrewsbury, responded on March 8, 2024 [Doc. 241], to which the WVDCR Defendants replied on March 18, 2024 [Doc. 247]. The matter is ready for adjudication.

## I.

The original Scheduling Order in this case, entered September 6, 2023, required Opening Rule 26 expert disclosures by November 13, 2023, Responsive Rule 26 expert disclosures by December 12, 2023, Rebuttal Rule 26 expert disclosures by December 28, 2023, and Discovery to close on January 11, 2024. [Doc. 41].

On November 13, 2023, Ms. Smith, pursuant to the Court's original Scheduling Order, made her Opening Rule 26(a)(2) Disclosures of expert witnesses, identifying Paul M. Adee, an alleged expert in Police Practices, Security and Corrections [Doc. 233-1]. On December 11, 2023, the Court entered an Amended Scheduling Order, setting the deadline for Opening Rule 26 expert disclosures as January 16, 2024. [Doc. 159]. The Amended Scheduling Order further required Responsive Rule 26 expert disclosures by February 14, 2024, Rebuttal Rule 26 expert disclosures by March 1, 2024, and Discovery to close on March 15, 2024. [*Id.*].

On January 16, 2024, Ms. Smith filed her Amended Rule 26(a)(2) Disclosures in accordance with the Amended Scheduling Order. [Doc. 233-2]. In her Amended Rule 26(a)(2) Disclosures, Ms. Smith once again identifies Mr. Adee, alongside two additional experts, and expresses her intent to supplement Mr. Adee's original November 13, 2023, report once "depositions . . . have been completed." [*Id.* at 1–2].

---

[1] On March 1, 2024, Defendants Erica Wade and Wexford Health Sources, Inc. ("Wexford") joined the WVDCR Defendants' Motion to Strike. [Doc. 234].

Thereafter, on February 19, 2024, Ms. Smith filed her Supplemental Rule 26(a)(2) Disclosures, which include a "supplemental report" by Mr. Adee. [Doc. 233-3]. In addition to his "previously stated findings," Mr. Adee's supplemental report contains the following opinions:

> 1. The [WVDCR] and [Southern Regional Jail ("SRJ")] had a custom and practice of not calling 911 when required. But instead, required Wexford medical personnel to do such. This was in violation of the standard of care and caused harm to Mr. Alvis Shrewsbury. Had they complied with the standard of care, his death would have been less likely.
>
> 2. Wexford Health Sources, Inc. had a policy, custom, and practice of requiring nurses to obtain orders from the on call physician prior to calling 911 for a patient in need of hospital care or emergency medical services. This was in violation of the standard of care and caused harm to Mr. Alvis Shrewsbury. Had they complied with the standard of care, his death would have been less likely.
>
> 3. The [WVDCR] and SRJ had a custom and practice of not providing training to new supervisors. This was in violation of the standard of care and caused harm to Mr. Shrewsbury. Had they complied with the standard of care, his death would have been less likely.
>
> 4. The [WVDCR] failed to conduct an adequate investigation into the circumstances leading up to and during Mr. Shrewsbury s medical emergency and death. This was in violation of the standard of care.
>
> 5. Wexford Health Sources, Inc. failed to conduct an administrative investigation, and conducted an inadequate Mortality Review and Morbidity Report into the circumstances leading up to and during Mr. Shrewsbury s medical emergency and death. This was in violation of the standard of care.

[*Id.* at 17].

The WVDCR Defendants now seek to strike Ms. Smith's supplemental disclosures as untimely. [Doc. 233]. Specifically, the WVDCR Defendants contend the supplemental disclosures "offer wholly new opinions based upon information" previously available to Ms. Smith and assert new "medical opinions" that Mr. Adee is unqualified to make. [Doc. 233 at 4]. Ms. Smith maintains her supplemental disclosures are timely because Mr. Adee utilized "information obtained from . . . depositions and written discovery" to supplement his "opinions from the initial

3

disclosure," not to formulate wholly new opinions. [Doc. 241 at 7]. Ms. Smith further contends Mr. Adee is qualified to provide the opinions contained in his supplemental report. [*Id.*]. Alternatively, Ms. Smith suggests that even if her supplemental disclosures are untimely, they should not be stricken from the record because the disclosures were made before the close of discovery and Defendants had ample time to cure any surprise. [*Id.* at 5–6].

## II.

### A. *Federal Rule of Civil Procedure 26*

*Federal Rule of Civil Procedure* 26(a)(2) requires a party to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Absent a court order or stipulation, "this disclosure must be accompanied by a written report -- prepared and signed by the witness --- if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). A party who has made a disclosure under Rule 26(a)

> must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.
>
> (2) *Expert Witness*. For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Fed. R. Civ. P. 26(e).

A party's duty to supplement expert witness information, however, is not an opportunity to disclose new opinions after the deadline for expert disclosures has passed. *See Campbell v. United States*, 470 F. App'x 153, 157 (4th Cir. 2012) ("To construe Rule 26(e) supplementation to apply whenever a party wants to bolster or submit additional expert opinions would wreak havoc in docket control and amount to unlimited expert opinion preparation." (cleaned up)); *Colony Apartments v. Abacus Project Mgmt., Inc.*, 197 F. App'x 217, 223 (4th Cir. 2006)). ("[T]his duty does not permit a party to make an end-run around the normal timetable for conducting discovery."). Rather, "Rule 26(e) envisions supplementation to add additional or corrective information," *Campbell*, 470 F. App'x at 157 (cleaned up), in instances where a party's initial disclosure "was incorrect or incomplete and, therefore, misleading," *Mullins v. Ethicon*, 2017 WL 455938, at *3 (S.D. W. Va. Feb. 2, 2017) (cleaned up); *see also Disney Enterprises, Inc. v. Kappos*, 923 F. Supp. 2d 788, 795–96 (E.D. Va. 2013) (granting motion in limine to preclude an expert from testifying about an opinion provided in a supplemental report because the analysis therein "could have and should have been made" in the original expert report).

B.      *Federal Rule of Civil Procedure 37*

"The purpose of Rule 26(a) is to allow the parties to adequately prepare their cases for trial and to avoid unfair surprise." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014). In the event a party fails to properly disclose or supplement a disclosure, Rule 37 provides for sanctions as follows:

> (c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.
>
> > (1) *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially

justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1).

District courts are accorded "broad discretion" to determine whether an untimely disclosure is substantially justified or harmless. *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014) (quoting *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)). For purposes of a Rule 37(c)(1) exclusion analysis, a district court "should be guided" by the following factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*S. States Rack & Fixture*, 318 F.3d at 597. "The burden of establishing these factors lies with the nondisclosing party." *Wilkins*, 751 F.3d at 222. "For the sanction of exclusion to apply, Rule 37(c)(1) does not require a finding of bad faith or callous disregard of the discovery rules." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 330 (4th Cir. 2011) (citing *S. States Rack & Fixture*, 318 F.3d at 598).

C.     ***Federal Rule of Evidence 702***

*Federal Rule of Evidence* 702, governing expert testimony, provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

6

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Although the admissibility of expert opinion is generally "flexible," the district court must function as a gatekeeper, permitting only expert testimony that "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993).

Whether a witness is qualified as an expert is "context-driven and 'can only be determined by the nature of the opinion he offers.'" *RG Steel Sparrows Point, LLC v. Kinder Morgan Bulk Terminals, Inc.*, 609 F. App'x 731, 738 (4th Cir. 2015) (quoting *Gladhill v. Gen. Motors Corp.*, 743 F.2d 1049, 1052 (4th Cir. 1984)). "A witness's qualifications are 'liberally judged by Rule 702,' and 'a person may qualify to render expert testimony in any one of the five ways listed' by the Rule." *Kadel v. Folwell*, 100 F.4th 122, 158 (4th Cir. 2024) (en banc) (quoting *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993)). "In undertaking its gatekeeping role to ensure evidence is reliable under Rule 702, a district court must decide whether the expert has sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case." *Id.* When an expert's qualifications are challenged, "the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered." *Kopf*, 993 F.2d at 377 (cleaned up).

## III.

*A.     Timeliness*

Ms. Smith has failed to show that her February 19, 2024, disclosure was a true supplementation pursuant to Rule 26(e). While Ms. Smith correctly states that "[p]arties . . . have a duty, to supplement expert reports" [Doc. 241 at 7], Rule 26(e) requires supplementation in a timely manner "if the party learns that in *some material respect* the disclosure or response is *incomplete or incorrect.*" Fed. R. Civ. P. 26(e) (emphasis added). Ms. Smith has not shown how Mr. Adee's November 13, 2023, report was "in some material respect . . . incomplete or incorrect." Rather, she maintains that because discovery was still ongoing, Mr. Adee obtained additional information "from . . . depositions and written discovery" to form "supplemental opinions from the initial disclosure." [Doc. 241 at 7]. Mr. Adee's initial report, however, makes no findings respecting 1. Defendants' "custom and practice of not calling 911 when required," 2. Defendants' "policy, custom, and practice of requiring nurses to obtain orders . . . prior to calling 911," 3. Defendants' "custom and practice of not providing training to new supervisors," 4. Defendants' failure "to conduct an adequate investigation into the circumstances leading up to and during Mr. Shrewsbury s medical emergency and death," or 5. Defendants failure "to conduct an [adequate] administrative investigation." [*Compare* Doc. 233-1 at 31 *with* Doc. 233-3 at 17]. Ms. Smith further concedes that "some of the information included in Mr. Adee's supplemental report may have been available to Mr. Adee prior to the January 16, 2024[,] deadline for Opening Rule 26 Expert Disclosures." [Doc. 241 at 4]. Thus, Ms. Smith's Supplemental Rule 26(a)(2) Disclosures are not a true supplementation but rather an attempt to submit additional expert opinions. Accordingly, the Court finds such disclosures were untimely.

### B.      *Sanctions*

Because Mr. Adee's supplemental report "contains completely different findings from the original disclosure," the WVDCR Defendants contend Ms. Smith's Supplemental Rule 26(a)(2) Disclosures are untimely and should be stricken from the record. [Doc. 233 at 2, 7]. The WVDCR Defendants, however, make no mention of the *Southern States* factors in their Motion to Strike. Although the Court is "not *required* to tick through each of the *Southern States* factors," *Wilkins*, 751 F.3d at 222, it should nevertheless take such considerations into account when determining whether the untimely disclosure of evidence is substantially justified or harmless.

The purpose of Rule 37(c)(1) is to "prevent[] surprise and prejudice to the opposing party." *S. States Rack & Fixture*, 318 F.3d at 597. Though untimely, the Court agrees with Ms. Smith that her Supplemental Rule 26(a)(2) Disclosures neither surprise nor prejudice Defendants. Although filed four weeks after the deadline for Opening Rule 26 expert disclosures, Ms. Smith's Supplemental Rule 26(a)(2) Disclosures were made in advance of the March 1, 2024, deadline for Rebuttal Rule 26 expert disclosures, nearly a month before the close of discovery on March 15, 2024, and well-before the parties' dispositive motions were filed. [Doc. 159]. And while the opinions contained in Mr. Adee's supplemental report are new, they are based on information obtained from depositions and written discovery the WVDCR Defendants had access to. Thus, these new opinions should come as no surprise to Defendants.

Nonetheless, any "surprise" caused by the supplemental disclosures could have been cured by deposing Mr. Adee. However, despite having ample opportunity to depose Mr. Adee both before and after receiving his supplemental report, Defendants simply chose not to, instead waiting until March 1, 2024, to file a motion to strike. Although the Court is obligated to act as a gatekeeper with respect to expert opinion, any qualms Defendants have with Mr. Adee's testimony

9

may be remedied by using "traditional and appropriate means" of challenging expert testimony at trial such as "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof . . . ." *Larosa v. Pecora*, No. 1:07-CV-78, 2009 WL 3460101, at *2 (N.D.W. Va. Mar. 2, 2009) (quoting *Daubert*, 509 U.S. at 595); *see also Glass v. Anne Arundel Cnty.*, 38 F. Supp. 3d 705, 714 (D. Md. 2014), *aff'd*, 716 F. App'x 179 (4th Cir. 2018).

Moreover, at the time Ms. Smith filed her Supplemental Rule 26(a)(2) Disclosures, trial was set for August 13, 2023. [Doc. 159]. Because Mr. Adee's supplemental report was disclosed nearly six months before the trial date, the Court finds that allowing the evidence would not disrupt the trial. The Court also finds that Mr. Adee's testimony as to Defendants' customs, policies, and practices with regard to calling 911, training new supervisors, and conducting adequate investigations is important testimony. The factors thus weigh in favor of excusing the late expert disclosure. Accordingly, the Court finds Ms. Smith's untimely disclosures were harmless.

C.     *Qualifications*

Rule 702 provides that a witness may be qualified as an expert by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Upon reviewing Mr. Adee's qualifications, the Court finds that his background in prison operations, inmate management, and correctional standards is extensive. He has served "32 years as a correctional officer, trainer, supervisor, shift commander, and jail administrator." [Doc. 233-3 at 4]. As a correctional officer and detention deputy, Mr Adee "was trained in the proper protocol regarding the care, custody, and control of inmates," and was responsible "for conducting routine well-being checks and inspections of inmates and their living areas to ensure their health and welfare." [Doc. 233-2 at 6]. As a detention supervisor and shift commander, Mr. Adee "provided oversight and supervision of

deputies and supervisors in the proper care, custody, and control of inmates," ensured that inmate living areas were managed "in accordance with established policy and standards," and "conducted and reviewed investigations of alleged officer and/or inmate misconduct." [*Id.* at 7]. Accordingly, the Court finds Mr. Adee qualified to render opinions on the proper operation and management of a correctional institution, including the duties owed by reasonable correctional officers and health professionals in correctional settings, the standard of care applicable to such duties, when and under what circumstances to provide medical services, appropriate staffing levels, the methods, manner, and extent of inmate observation and monitoring, and the adequacy of any administrative investigations performed.

However, the Court finds Mr. Adee unqualified to opine on the likelihood of Mr. Shrewsbury's death, specifically that "his death would have been less likely" had Defendants complied with the applicable standards of care. Although Mr. Adee has undoubtedly "responded to and/or supervised hundreds of medical emergencies involving inmates," and "interacted with medical professionals" frequently during his 32-years of service, [Doc. 233-3 at 4], there is nothing in his listed qualifications to suggest he is qualified to offer any medical opinion. *See, e.g.*, *Zellers v. NexTech Ne., LLC*, 533 F. App'x 192, 199 (4th Cir. 2013) (finding that a Ph.D.-holding neuropsychologist and neurotoxicologist was not a medical doctor and was thus "not qualified to diagnose the cause of [plaintiff's] alleged symptoms"). And it cannot be seriously disputed that testimony about an individual's medical diagnoses, prognoses, or similar conclusions as to his medical condition are "based upon scientific, technical, or other specialized knowledge." Fed. R. Evid. 702.

Because Mr. Adee lacks formal medical training, any testimony related to the severity or nature of Mr. Shrewsbury's underlying medical conditions are outside his scope of

11

expertise. While Mr. Adee may testify about the factual circumstances leading up to Mr. Shrewsbury's death and whether his pain and discomfort would have been apparent to jail staff had they been appropriately monitoring him, he is not qualified based on his knowledge, skill, experience, training, or education to theorize about the preventability of Mr. Shrewsbury's death at any point in time.

## IV.

Based upon the foregoing discussion, the Court **DENIES** Defendants' Motion to Strike Plaintiff's Supplemental Rule 26(a)(2) Disclosures [**Doc. 233**].

The Clerk is **DIRECTED** to transmit a copy of this written opinion and order to all counsel of record and to any unrepresented party.

ENTER: September 13, 2024



Frank W. Volk
United States District Judge

12