February 29, 2024

Stephen New, Esquire
430 Harper Park Drive
Beckley, WV 25801

RE: The Alvis Ray Shrewsbury Case

Miranda Dawn Smith on behalf of the Estate of Alvis Ray Shrewsbury
Vs
West Virginia Division of Corrections (WVDOCR) & Wexford Health Sources, Inc

Dear Mr. New,

I, Edna Wong McKinstry, MD, FACP, was asked to opine on the Paul M. Adee report and expert opinion, specifically the belief emergency services were not summoned in a timely manner.

Mr. Adee is a 32-year correctional veteran, rising up to the rank of Major, Division Commander. Mr. Adee contends that the correctional staff at WVDOCR failed to supervise Mr. Shrewsbury's care and their subordinate personnel, placing the decedent in a dangerous condition. Mr. Adee contends that medical emergencies are not a routine or mundane task that is associated with working in a jail facility. Given this, "staff must be trained" in medical emergencies that arise in jail and "junior staff must [sic] be supervised". Mr. Adee states officer Jarrell had 6 months of service, corporal Radosevich had 2 1/2 years' experience, and sergeant Blake had less than a year in service; all were officers who responded to Mr. Shrewsbury's medical emergency. Sergeant Williams, "who was the only supervisor that responded to C-5, departed the area at 12:14:38".

Mr. Adee asserts the essential members of the jail medical care team and custody left the decedent in critical moments of his medical emergency.

1. supervisory staff were not in the area during critical moments [sic] to ensure staff provided effective, efficient and professional care [to the decedent]

2. Sergeant Williams departed C-5 at 12:14:38 AM

3. LPN Williams departed C-5 at 12:15:22 AM

4. Sergeant Williams left the pod to assist LPN Mullins to search for paperwork to send inmates out

5. Sergeants Blake and Williams left the look for adult diapers

6. CNA Perry did not attend to the decedent for 7 mins after he arrived in the booking cell to clean up

7. Corporal Radosevich leaves the decedent alone in the booking shower from 12:24:37 to 12:27:45 AM

| Shrewsbury vs West Virginia Division of Corrections (WVDOCR) & Wexford Health Sources, Inc | EDNA WONG MCKINSTRY MD FACP |
|---|---|

EXHIBIT B

Timeline events 9/16/2022
12:03:59 AM: Decedent is noted on video surveillance to fall to the floor
12:04:14 AM: Inmate goes to dayroom intercom to ask officer to send medical
12:05:01 AM: Inmate is at the intercom again for officer to get medical
12:05:32 AM: 2 officers and 1 nurse respond and enters section and Cell 16
12:07:02 AM: Officer and nurse into cell, turn on lights
12:08:13 AM: 2 Officers return with nurse and med cart
12:13:31 AM: Officer returns with wheelchair, places in front of Cell 16 door
12:14:43 AM: Decedent is at the cell down and sits down on toilet
12:17:48 AM: Decedent is pushed in wheelchair out of section. Clear liquid on floor after pushing wheelchair

Witness Accounts:
12:17 LPN Mullins ran to call on-call doctor (Dr. Rashid) and received no response.

Video Surveillance:
12:18:55 AM: Decedent enters Booking area

Witness Accounts:
12:20 LPN Mulliins notifies RN Director, Beth Waugh, to inform of the situation. RN Director advised to call next doctor on-call

Video Surveillance:
12:21:38 AM: Decedent is wheeled into the shower room

Witness Accounts:
12:21 CNA Perry contacts EMS
12:23 LPN Mullins calls Dr. Baldera with no response.
12:24 LPN Mullins calls Dr. Martin who advised sending the decedent out

Video Surveillance:
12:26:39 AM: Officer goes to end of counter and maks call on radio
12:27:43 AM: Nurse jumps out of chair and runs to shower room. Officers back and forth in Booking and then 2nd nurse arrives
12:29:54 AM: Officer arrives with med cart

Witness Accounts:
12:40 CNA Perry states decedent's pulse was lost. Sergeant Blake started chest compressions

Video Surveillance:
12:41:54 AM: EMS arrive and go to shower

EMS was contacted at approximately 12:21 AM. At 12:14, the decedent was noted to have a possible GI bleed by medical staff. At 12:17, LPN Mullins attempted to call on-call MD to get permission to send the inmate out. Prior to going up the chain of medical command, CNA Perry had summoned EMS.

Opinion

I reviewed the expert opinion of Mr. Paul Adee. With a certain degree of medical certainty, I have this to add:

While I cannot comment on the adequacy of staffing within the West Virginia jail system, or the inadequacy of well-being checks Mr. Adee contends was lacking, or the inadequate level of supervision leading to harm, or whether staff and officers violated the jail standard of care, given it isn't my purview as a medical doctor, I can say, within my professional medical capacity, there was no medical personnel who accompanied Mr. Shrewsbury into the booking cell and the decision to leave him unattended was a poor one. The decision to have Mr. Shrewsbury moved from his cell to the booking cell to have him cleaned up was an equally poor decision.

I do agree with Mr. Adee in that LPN Mullins needed better supervision, given she did not know where paperwork was kept for sending the inmate to hospital and, as the most experienced medical personnel, should have insisted either herself, or CNA Perry, accompany a medically unstable inmate at all times and that this inmate should not have been placed upright in a wheelchair, or be allowed to stand while blood was coming from the rectum. This action(s), or lack thereof, contributed to and played a role in the events that led to the decedent's death.

I do not agree with Mr. Adee that EMS was summoned untimely. According to witness and video records, three minutes elapsed for a decision to send the decedent to the ER, and four minutes elapsed for EMS to be summoned from the time a decision was made to send the decedent out.

The issue at hand is not the timeliness of calling the paramedics, but rather, poor clinical judgment in moving the inmate, leaving the inmate alone and making the inmate sit in a wheelchair and then stand to clean himself. In situations of active gastrointestinal bleeding, the blood pressure can be preserved if a patient is left recumbent. It is likely the decedent's blood pressure was preserved up until the moment he had a bloody movement. Even then, It could have been stable if the decedent was left flat on his back and not moved while waiting for EMS to arrive. Poor clinical judgement directly contributed to and played a role in the events that led to the decedent's death.

Documents reviewed

1. Exhibit A1 Expert report prepared by Paul M. Adee, CCM, CCHP, November 13, 2023
2. WVDOCR Report of Investigation, Trina McKinney, Investigator, Initial report January 6, 2023, new format, July 19, 2023

As discovery is ongoing, I reserve the right to supplement and/or amend my opinions.

| Shrewsbury vs West Virginia Division of Corrections (WVDOCR) & Wexford Health Sources, Inc | EDNA WONG MCKINSTRY MD FACP |
|---|---|

I hereby certify that this report is a complete and accurate statement of all of my opinions, and the basis and reasons for them, to which I will testify under oath.

REVIEWER SIGNATURE

_____
Edna Wong Mckinstry, MD, FACP
Internal Medicine, Board Certified
North Carolina Licensure: 2016-01960
Texas Licensure: Q2870
Arizona Licensure: 44626