```
 1              IN THE UNITED STATES DISTRICT COURT

 2          FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

 3                       BECKLEY DIVISION

 4   _____

 5   MIRANDA DAWN SMITH, on behalf

 6   of the ESTATE OF ALVIS RAY

 7   SHREWSBURY,

 8          Plaintiff,

 9      v.                              Civil Action No.:

10   WEST VIRGINIA DIVISION OF          5:23-cv-00210

11   CORRECTIONS AND REHABILITATION,

12   et al.,

13          Defendants.

14   _____

15                  VIDEOTAPED TRIAL TESTIMONY

16   _____

17

18   WITNESS:                 EDNA WONG MCKINSTRY, M.D., FACP

19   DATE:                    Friday, September 13, 2024

20   START TIME:              10:42 a.m. EST

21   END TIME:                1:53 p.m. EST

22   REMOTE LOCATION:         Remote Legal platform

23   PROCEEDINGS OFFICER:     Gina Nilio, CER-2150

24   JOB NO.:                 28378

25
```

EXHIBIT D

1     Q    And you have likewise reviewed the Criminal
2  Investigation Division investigation report, including
3  the incident reports from witnesses like fellow inmates,
4  as well as the photographs?  You had that available to
5  you?
6     A    Yes, I have.  I have reviewed them, yes, sir.
7     Q    Have you reviewed any information in this case
8  since March 2024, when you gave your deposition in this
9  case, that changes or alters your opinions in any way?
10    A    No, I haven't been given or reviewed any new
11 information since March of 2024 up until today.  And
12 it's not -- my opinion has not changed.
13    Q    The types of information that you just
14 described, the medical records, the autopsy reports, the
15 videos, the photographs, the medical records, everything
16 that you have relied on in arriving at your opinion, is
17 that the type of information that you would typically,
18 as an expert witness, utilize and rely upon, along with
19 your experience, training and knowledge, in arriving at
20 your opinions?
21    A    Yes, that would be the information I would
22 use, along with my expertise, to formulate an opinion on
23 the case.  Yes.
24    Q    Dr. McKinstry, I'm going to ask your opinion
25 about the Wexford defendant's actions or inactions in

```
 1   16th.  You certainly do not get him up.  You do not put
 2   him in a wheelchair.  You do not wheel him anywhere else
 3   before you stabilize him, because that would be what we
 4   would do in the hospital.
 5        Q    Okay.  Now --
 6             MR. HERRICK:  Move to strike the late,
 7   closed opinions in regard to the positioning of the
 8   legs.
 9             MR. NEW:  Okay.
10   BY MR. NEW:
11        Q    Doctor, explain to the jury the significance
12   of no one calling 911 immediately, no one from the
13   security staff who had a cell phone right there in the
14   cell with Alvis Shrewsbury, to no one from medical
15   ensuring that 911 was called immediately.
16        A    I think time here was of the essence.  If they
17   had called sooner and the paramedics arrived sooner, it
18   would have bought Mr. Shrewsbury -- you know, I know
19   it's hindsight, but -- and we don't know, but I mean,
20   there is a, you know, probability that if you -- if you
21   shaved off a little bit of time and helped him with his
22   medical emergency, it wouldn't -- the outcome would have
23   been different.  It -- it meant it --
24        Q    That begins with --
25        A    -- meant at the time --
```

```
 1      Q    -- a call to --
 2      A    -- it --
 3      Q    -- 911, does it not?
 4      A    I'm sorry, say it again, Mr. New.
 5      Q    That begins with a prompt call and not a
 6  delayed call to 911, correct?
 7      A    Correct.  But I think all of it need -- needed
 8  to happen simultaneously: stabilizing the patient,
 9  calling 911.  It -- it didn't have to be sequential,
10  like, we'll do this first, then we'll call this, you
11  know.  It had to be all at once.
12           Like I said, you know, whoever the medical --
13  the most senior medical personnel on there, this person
14  is the most trained.  You can't expect the correctional
15  officer to know what to do.  You can't expect the CNA,
16  which is a -- a nurse's aide, to -- to know what to do.
17  That person should be the -- the -- I call it the army
18  sergeant.  You do this, you do that.  I mean, that all
19  needed to happen simultaneously.
20      Q    Between 12:04 a.m. and 12:28 a.m., was there
21  any single modality of treatment that anybody from
22  Wexford performed?  Was that -- in those 24 minutes from
23  12:04 a.m. to 12:28 a.m., was there a single modality of
24  medical treatment administered to Alvis Shrewsbury by
25  anybody from Wexford?
```

```
 1                  MR. NEW:  Objection.  Move to strike.
 2                  You can answer.
 3                  THE WITNESS:  Yes.
 4     BY MR. SHUMAN:
 5          Q    Right.  Today's the first time in any of your
 6     reports, deposition, or prior testimony that you've
 7     given that you've offered any opinions relating to the
 8     DCR causing or contributing to the death of Mr.
 9     Shrewsbury; isn't that right?
10                  MR. NEW:  Objection.  Move to strike.  It
11     mischaracterizes.  This has already been briefed.
12                  MR. SHUMAN:  Yeah, it's subject to a
13     motion and she testified to it, so we're going to get to
14     the bottom of it.
15                  MR. NEW:  Yeah.
16                  THE WITNESS:  Yeah --
17                  MR. NEW:  It's already -- it's already
18     been briefed.
19                  MR. SHUMAN:  And I would move to strike
20     her earlier testimony where she referenced that the DCR
21     did anything to cause or contribute to the death because
22     she -- that's the motion -- subject to a motion.  It's a
23     previously undisclosed opinion.  It's a new opinion that
24     hasn't been disclosed at all until today before this
25     jury.
```

```
 1                    You can answer, Doctor.
 2                    THE WITNESS:  Yes.
 3    BY MR. SHUMAN:
 4         Q    In your first report that you authored January
 5    15, 2024, you don't offer any opinions in there that the
 6    DCR Defendants caused or contributed to Mr. Shrewsbury's
 7    death, do you?
 8         A    I don't believe I was asked and therefore I
 9    didn't give an opinion in January.
10         Q    Okay.  So the answer to my question is no; is
11    that right?
12         A    No, that is correct.
13         Q    Okay.  And then you authored a second report,
14    February 29, 2024.  Are you familiar with that?
15         A    Yes.
16         Q    And at this point you had had the benefit of
17    reading Plaintiff's correctional expert Mr. Adee's
18    report, right?
19         A    Yes.
20         Q    And it looks to me like the purpose of this
21    February report -- I don't represent that -- it says
22    that you were asked to opine on the report that Mr. Adee
23    did.  Do you recall that?
24         A    Yes, I believe I do recall it.
25         Q    Okay.  As you discussed with Mr. Herrick
```

```
 1   earlier, if you go to your opinions, the third
 2   paragraph, quote, "I do not agree with Mr. Adee that EMS
 3   was summoned untimely," end quote.  Do you recall that?
 4       A    Yes, I do.
 5       Q    Do you recall giving a deposition March 16th
 6   of 2024?
 7       A    Yes, I do recall giving a deposition March
 8   16th of 2024.
 9       Q    Okay.  And in your deposition, you even
10   doubled down on the opinion that you disagreed with Mr.
11   Adee.  Do you recall that?
12       A    Well, if it's written in a deposition -- I
13   don't recall, but if it's written by and it's documented
14   by the court reporter.
15       Q    We'll pull it up for you.
16       A    What page are you looking at?
17       Q    Fifty-seven.
18       A    Okay.  Fifty-five, 57.  Okay.
19       Q    Yep.
20       A    Okay.
21       Q    There's a question there and it says, "So your
22   conclusions in this second report seem to be, first,
23   that you don't believe calling EMS was untimely."  Do
24   you see that?
25       A    Yes, I do see it.
```

```
 1      Q    All right.  The rest of that deals with the
 2   positioning, which is a medical issue that you'd agree
 3   with me has nothing to do with the DCR Defendants,
 4   right?
 5      A    I do agree with you that it is a medical issue
 6   that does not have anything to do with the DCR
 7   personnel, correct.
 8      Q    Okay.  And then, so getting back to where I
 9   was going with that, says, "So your conclusions in this
10   second report seemed to be, first, that you don't
11   believe calling EMS was untimely."  And when you go to
12   the answer, you say, "Yes."  You recall that?
13      A    Yes, I recall it.
14      Q    So can you explain to me why the first time
15   that you have an opinion regarding the DCR Defendants in
16   this case is today when you're here in front of the
17   jury?
18              MR. NEW:  Objection.  Mischaracterizes
19   her testimony.
20   BY MR. SHUMAN:
21      Q    Well, Doctor, have you offered any opinions in
22   this case about the DCR Defendants other than the one
23   you offered today?
24      A    No.  I don't --
25      Q    No, you --
```

```
 1      A    -- need --
 2      Q    -- haven't.
 3      A    -- to.
 4      Q    So today is the first day --
 5      A    I --
 6      Q    -- that you're offering any opinion regarding
 7   the DCR Defendants; is that right?
 8      A    Repeat your question again.  Today is the
 9   first day that I'm --
10      Q    Today --
11      A    -- offering --
12      Q    -- is the --
13      A    -- an --
14      Q    -- first day that you are offering any
15   opinions about the DCR Defendants causing or
16   contributing in any way to Mr. Shrewsbury's death; is
17   that correct?
18               MR. NEW:  Objection.  Mischaracterizes
19   her testimony.
20               THE WITNESS:  That's probably correct.
21   BY MR. SHUMAN:
22      Q    Well, it's not probably correct.  It is
23   correct; is it --
24               MR. NEW:  No --
25               MR. SHUMAN:  -- not?
```

```
 1   opinion?  I suppose --
 2   BY MR. SHUMAN:
 3       Q   You're just changing your opinion from your
 4   prior report and deposition testimony; is that correct?
 5               MR. NEW:  Objection.  Move to strike.
 6   BY MR. SHUMAN:
 7       Q   It's not based on any new evidence, correct?
 8       A   Oh, I see what you mean.  Got you.  Yeah, it's
 9   not based on any new evidence.  I haven't seen any new
10   evidence since --
11       Q   Is --
12       A   -- March.
13       Q   Did you have any conversations with Mr. Adee?
14       A   No, I did not.  I don't -- other than reading
15   his report, I have no relationship with Mr. Adee.
16       Q   Okay.  Did you have any conversations with Mr.
17   New that would have changed your opinion in this case
18   regarding the DCR Defendants?
19       A   Did I have any conversations -- I don't
20   recall.
21       Q   Okay.  So you've just changed your mind; is
22   that right?
23       A   I think I reserved the right to change my
24   mind; isn't that correct?
25       Q   Okay.  So you're disclosing this for the first
```

```
 1   time today based on no new evidence, just simply that
 2   you changed your mind --
 3                MR. NEW:  Objection.
 4                MR. SHUMAN:  -- right?
 5                MR. NEW:  Move to strike.
 6                You can --
 7                MR. SHUMAN:  That's --
 8                MR. NEW:  -- answer.
 9                MR. SHUMAN:  -- what she had said.
10          THE WITNESS:  It would appear so, sir.
11                MR. SHUMAN:  Let me take a couple minutes
12   here.
13                THE WITNESS:  Okay.
14                MR. SHUMAN:  (Indiscernible - audio
15   disruption) have any other questions for you.  But for
16   the record, I want to make clear that the DCR Defendants
17   are going to move to strike any and all testimony that
18   you've provided with regard to the DCR Defendants and
19   any causation, because those opinions were not
20   previously disclosed.
21                They are not based on any new evidence.
22   They are not based on any -- anything that has otherwise
23   been produced in this case.  They weren't provided to
24   your counsel, nor were they provided to us.  And today
25   is the first day that you are disclosing those opinions.
```